**TRINITY RIVER AUTHORITY OF TEXAS and City of Houston, Relators,**

**v.**

**Waggoner CARR, Attorney General, Respondent.**

**No. A–10448.**

Supreme Court of Texas.

Jan. 20, 1965.

Clark, Thomas, Harris, Denius & Winters, Austin, McCall, Parkhurst & Horton, Dallas, John Wildenthal, Jr., City Atty., Houston, Victor W. Bouldin, of Vinson, Elkins, Weems & Searls, Houston, Fulbright, Crooker, Freeman, Bates & Jaworski, L. Keith Simmer and J. Wiley Caldwell, Houston, for relators.

Waggoner Carr, Atty. Gen., Austin, Joe Long and James M. Strock, Asst. Attys. Gen., for respondent.

CALVERT, Chief Justice.

In this original proceeding in this Court, Relators seek a writ of mandamus to require respondent to approve Trinity River Authority of Texas Interim Water Revenue Bonds (Livingston Project), Series 1964.

The bonds are in denominations of $500,000 each and total $48,500,000. They are secured by and payable from a pledge of income to be received by the Authority from the City of Houston. The writ sought is issued conditionally.

Respondent offers two reasons for declining to approve the bonds; and, in addition, respondent presents nine objections raised by certain taxpayers in a suit filed in the 152nd Judicial District Court of Harris County, Texas, for consideration by this Court.

We will consider first the respondent's reasons for refusing approval. They may be restated in our language as follows: (1) The statutory provision under which the Authority purported to act is so vague and uncertain in so far as it authorizes issuance of "interim bonds" that it is void, and the bonds do not meet the standards required by other statutory provisions relating to the issuance of "interim bonds"; and (2) the bonds cannot be approved as other than "interim bonds" because they contain the word "interim" in their title and thus would be misleading.

Trinity River Authority of Texas is a conservation and reclamation district created in 1955 by an act of the Legislature. See Acts 54th Leg., p. 1314, ch. 518, shown in Vernon's Texas Civil Statutes as Art. 8280-188.[1] Sec. 8 of the statute confers power on the Authority to issue bonds and places certain limitations on the power.

Sec. 8(a) provides that the Authority may issue negotiable bonds of three general classes, as follows: (1) Bonds secured by ad valorem taxes, when voted. (2) Bonds secured solely by a pledge of net revenues accruing to the Authority. (3) Bonds secured by a combination pledge of net revenues and taxes.

Sec. 8(c) provides that "*Bonds of the Authority*[2] shall be authorized by resolution adopted by the Board [of Directors].

1. All Article references are to Vernon's Texas Civil Statutes.

2. Emphasis ours throughout.

* * * shall mature serially or otherwise within such period and at such times as may be prescribed in the resolution, not exceeding a maximum of fifty (50) years. * * * provided that the interest cost to the Authority * * * does not exceed six per cent (6%) per annum, * * * and within the discretion of the Board may be made callable prior to maturity at such times and prices as may be prescribed in a resolution authorizing the bonds."

Sec. 8(j) reads: "Pending the issuance of definitive bonds the Board may authorize the delivery of negotiable interim bonds or notes, eligible for exchange or substitution, by use of definitive bonds." This is the only provision in the statute dealing expressly with "interim bonds." Sec. 8(k) authorizes issuance of refunding bonds.

The bonds which respondent has declined to approve were ordered issued by a resolution of the Board of Directors on October 16, 1964. They are dated October 15, 1964, mature on October 15, 1996, bear interest for the first year at the rate of 3¼% and thereafter at the rate of 4%, and are redeemable at any time on thirty days' notice.

Respondent does not question that the bonds are well within the limitations of Sec. 8(c), inasmuch as they mature in less than fifty years and bear interest at a rate less than 6%. But respondent argues that the limitations provided in Sec. 8(c) are not applicable to "interim bonds"; that if they were applicable there would be no distinction between "interim bonds" and the bonds authorized in Sec. 8(a); that the word "interim" means "meanwhile" or "in the meantime," and in enacting Sec. 8(j) the Legislature intended to provide for the issuance of "temporary" bonds for which it provided no standards or limitations in Art. 8280–188; that if the power to issue "interim bonds" is to be upheld, they must meet the standards and be within the limitations prescribed for "interim bonds" in Art. 7880–84a, Vernon's Texas Civil Statutes.

Art. 7880–84a is contained in Chapter 3A of Title 128 of our statutes and deals exclusively with water control and improvement districts and water improvement districts. It authorizes boards of directors of such districts "to declare an existing emergency in the matter of funds not being available" for certain necessary expenses, and authorizes the issuance of "interim bonds," after construction bonds have been voted, to obtain emergency loans. The principal limitations placed on the issuance of such bonds are (1) that they must mature not later than ten years from date of issue, and (2) the principal amount of the issue may not exceed 25% of the principal amount of the bonds of the district which have been voted, but not sold. It is apparent that the bonds in question here do not comply with the first limitation.

There is undoubtedly a reasonable basis in the language of Sec. 8(j) for the position of the respondent that the Legislature intended to differentiate between permanent or final bonds and "interim bonds" to be issued by the Authority. We note again the language of Sec. 8(j): "Pending the issuance of *definitive bonds* the Board may authorize the delivery of negotiable *interim bonds,* or notes, eligible for exchange or substitution, by use of *definitive bonds.*" The language contrasts "definitive bonds" with "interim bonds," and authorizes the exchange or substitution of "definitive bonds" for "interim bonds." According to Webster's Third New International Dictionary, the word "definitive" has a variety of meanings, and is said to be a synonym of "conclusive" and to be contrasted with "provisional." The word is sometimes used in referring to judgments as "definitive judgments," and as so used is interpreted to mean "final judgments." See 11 Words and Phrases, p. 606; 26A C.J.S., p. 146. Considering the respective meanings of the words "interim" and "definitive," it is clear that the Legislature intended to authorize the Authority to issue two types of bonds, temporary and permanent or final.

■ Having thus agreed to some extent with the premise of respondent, we are yet not prepared to accept his conclusions that because the Legislature failed in Art. 8280–188 expressly to prescribe outside limits of amount and term for which "interim bonds" could be issued, less than those for which "definitive bonds" could be issued, Sec. 8(j) must be held void for vagueness or the limits prescribed in Art. 7880–84a must be read into it. We know of no good reason why the Legislature could not empower the Authority to issue "interim bonds" in amounts and for terms within the limitations provided for definitive bonds; and this, apparently, is what the Legislature did. When the Legislature provided a maximum term of fifty years and a maximum rate of interest for "bonds of the Authority" in Sec. 8(c), it provided limitations for *all* bonds of the Authority, whether tax bonds, revenue bonds, combination revenue and tax bonds, definitive bonds or interim bonds. When Art. 8280–188 is thus interpreted, there is no need to read into it legislative provisions expressly limiting the amount and term of interim bonds to be issued by other types of water districts. When it is thus interpreted, use of the word "interim" in the title of the bonds does not mislead prospective purchasers; rather, it serves a useful purpose in that it gives notice that the Authority intends later to issue and substitute definitive bonds and that the interim bonds are to be left outstanding only in the meantime, only temporarily. That the bonds are in fact "interim bonds" is confirmed by the issuing resolution of the Board of Directors which recites that "interim bonds with an early option of redemption should now be issued with the view to issuing permanent bonds in lieu thereof when such permanent bonds can be most advantageously marketed."

Security for the $48,500,000 bond issue rests in a contract entered into between Trinity River Authority of Texas and the City of Houston. The contract contains detailed provisions covering many areas of agreement. As pertinent and relevant here, the Authority agrees to supply to the City and the City agrees to take 70% of the water yield of the Livingston Reservoir and the Salt Water Barrier Projects, when constructed, for its own use and the use of the customers of its distribution system; and the City agrees to pay to the Authority from the revenues of its water system an amount equal to the amount of the Authority's bonds and interest thereon as the same become due. The contract was authorized on behalf of the City by the qualified electors thereof by an affirmative vote of 49,-114 to a negative vote of 11,256, and on behalf of the Authority by a resolution of its Board of Directors.

The nine taxpayer objections brought into this case by respondent relate to the validity of the foregoing contract. The nine objections are as follows:

(a) That the contract has not been authorized to be executed by the Trinity River Authority of Texas and by the City of Houston in the manner required by Article 1109e, Vernon's Texas Civil Statutes.

(b) That the City has not complied with Article II, Section 7b of the City Charter in authorizing the contract.

(c) That the contract attempts illegally to delegate the authority of the Mayor and City Council to persons not subject to election by voters of Houston.

(d) That the contract attempts to lend the credit of the City of Houston to Trinity River Authority and attempts to grant public money or other things of value to Trinity River Authority, contrary to Article III, Sections 51–52 of the Constitution of Texas.

(e) That the contract is lacking in mutuality.

(f) That the proposed dam and reservoir to be constructed under the contract is not located in the City of Houston or

Harris County, but in other counties and in another watershed.

(g) That the contract is so vague and ambiguous as to be incapable of performance.

(h) That the quantity of water which will be available from the proposed reservoir is uncertain.

(i) That the contract obligates the Trinity River Authority to perform functions outside its boundaries contrary to Article 8280–188, Sections 29 and 31.

None of the questions raised by the listed objections are briefed by respondent. They do not constitute reasons why he has declined to approve the bonds. In his letter declining to approve the bonds he gives only the two reasons set out in the beginning of this opinion. With respect to the nine listed objections, his letter states:

> "3. Two citizens of the City of Houston have raised the following additional questions as to the validity of the aforementioned contract entered into between the City and the Authority on September 2, 1964, which forms the basis of the security for the proposed bonds. These questions were raised in a lawsuit styled Wallace W. Franks, et al., v. Louie Welch, the City of Houston, et al., No. 656,660, filed October 21, 1964, in the 152nd Judicial District Court of Harris County, Texas, to-wit: [The objections are listed here as set out above.]"

The letter then continues:

> "We are advised that the 152nd District Court of Harris County, Texas granted the defendants' Motion for Summary Judgment in the above cause on November 10, 1964, and are of the opinion that the questions raised in paragraph three of this letter are without merit. Nevertheless, the questions have been raised and we will not approve the bonds under these circumstances."

The letter clearly discloses that respondent has not declined to approve the bonds because he believes they are invalid for any of the reasons stated in the nine objections. On the contrary, he states that in his opinion the nine objections "are without merit." Respondent does not suggest in his answer to the petition for writ of mandamus that the objections state valid reasons for declining to approve the bonds. He states only that "Unless the foregoing questions are resolved by this Court in this action, or until the case now in litigation in Harris County is finally resolved, the Attorney General cannot approve the bonds."

The ultimate effect of respondent's position is that he will not approve the bonds as long as litigation questioning their validity is pending, however unmeritorious the litigation may be. Thus it seems that *it is the fact that the litigation is pending which constitutes his reason for refusing his approval.* If that had been stated as his only reason, a writ of mandamus would under no circumstances have been issued to require his approval of the bonds. As the matter stands, we simply decline to consider and decide the questions raised by the nine objections.

This Court cannot embark upon a policy of deciding issues in pending litigation in a proceeding of this character. If it is to be done in this case, then every issuer of bonds hereafter is entitled to have it done for it. If suit is filed in a trial court questioning the validity of bonds, the issuer will have the same right as the relators in this proceeding to have the litigation terminated by using the office of the Attorney General. The long established practice of the Attorney General to refuse to approve bonds as long as litigation questioning their validity is pending would have come to an end, and, in its stead, a practice instituted of having the Attorney General decline approval because objections have been made in pending litigation which this Court will be asked to

adjudicate even though the Attorney General is unwilling to adopt the substance of the objections as reasons for disapproval.

■■■ We realize that relators have been delayed in the achievement of their common objectives by pending litigation, and that their disposition to chafe at further delay is but natural. Others have stood in their shoes. In the normal course of things, most issuers of municipal bonds regard their quick sale as imperative so that the proceeds may be available to finance some public improvement deemed urgently needed. But the original jurisdiction of this Court to issue writs of mandamus to the Attorney General is not to be invoked or exercised to oust the jurisdiction of the trial courts and Courts of Civil Appeals to decide the issues in pending litigation. As to such issues, the process of trial and appeal is, in law, an adequate remedy. Our original mandamus jurisdiction is to be invoked and exercised only to settle those issues of bond validity which are not involved in pending litigation and which are raised by the Attorney General.

We decide only the questions raised by respondent in his reasons for refusing to approve the bonds; and finding them to be without merit, we order the issuance of a writ of mandamus to require approval *unless* he approves the bonds or declines approval because of pending litigation.

SMITH, Justice (dissenting).

I do not disagree with the Court's holding on the question raised by the Respondent, the Attorney General of Texas. However, I do disagree with the action of the Court in deciding the questions when it is obvious that this Court is without jurisdiction to issue a writ of mandamus. In view of the record in this case, I would deny the writ of mandamus. By taking this course the Court would be following sound legal precedent.