**A & T CONSULTANTS, INC., Relator,**

v.

**John SHARP, Comptroller of Public Accounts of the State of Texas, Respondent.**

No. 94–1024.

Supreme Court of Texas.

Argued Jan. 18, 1995.

Decided July 21, 1995.

Rehearing Overruled Sept. 14, 1995.

Troy L. Voelker, Round Rock, for relator.

John Sharp, Sandra Conditt Joseph, Christopher Johnsen, Austin, for respondent.

GONZALEZ, Justice, delivered the opinion of the Court, in which PHILLIPS, C.J., and HIGHTOWER, ENOCH, SPECTOR, and OWEN, JJ., join.

In this original proceeding, the relator, A & T Consultants, Inc., seeks a writ of mandamus directing John Sharp, the Comptroller of Public Accounts of the State of Texas, to disclose certain information in his possession regarding the state's franchise taxpayers. We conditionally grant mandamus relief compelling disclosure of some of the requested information because it is public information under the Texas Open Records Act.

## I.

In June 1990, pursuant to the Texas Open Records Act (TORA), TEX.GOV'T CODE §§ 552.001–.353 (1994 & Supp.1995), A & T requested the comptroller to furnish a list of all franchise taxpayers in the state subjected to an audit resulting in a final determination of a tax deficiency assessment or refund since September 1, 1983. A & T asked for the list to include not only the taxpayers' names, but also their taxpayer numbers, full mailing addresses, the amount of tax deficiency assessed against them or the amount of tax refunded to them, and the relevant periods or dates involved in their audits. The comptroller agreed to provide some of the information that A & T requested, but not the actual amount of tax assessments or refunds or the names of taxpayers who received refunds.

The comptroller later declined to provide the information A & T sought because he believed that some of it was exempt from disclosure, either as exceptions to TORA, *see id.* §§ 552.101–.123, or under the Tax Code's confidentiality provisions. *See* TEX.TAX CODE §§ 111.006, 151.027, 171.206. In this circumstance, TORA required the comptroller to seek an opinion from the attorney general regarding whether A & T's request for public information included information made confidential by statute. *See* TEX.GOV'T CODE § 552.301. In June 1990, the comptroller asked the attorney general to render an open records decision regarding A & T's request and similar requests from other parties not involved in this suit.

The attorney general issued his decision regarding A & T's request for tax information in June 1994, but withdrew the opinion pending the present litigation in October 1994. The attorney general concluded, among other things, that the confidentiality provisions of the Tax Code protected the amounts of any tax deficiency from disclosure under TORA, but not the amounts of refunds or the identity of taxpayers who received refunds. The comptroller apparently disagreed with the attorney general's opinion, because he requested the attorney general to reconsider its opinion in July 1994.[1] Also in July, A & T filed two additional requests with the comptroller. It expanded the scope of its request to include taxpayer and audit records since 1979. It also requested additional categories of information, including franchise taxpayers' standard industrial classification (SIC) codes, the reason for their audits, the taxpayers' primary and secondary errors, taxpayers' responses to audits, the audit method, the "assignment code" (the basis for the comptroller's decision to assign an audit), the audit office, and the auditor's number and group. The comptroller again offered to comply partially with A & T's request. In a letter to A & T in August 1994, the comptroller stated that he would provide the following information: franchise taxpayers' names, taxpayer numbers, full mailing addresses, SIC codes, the audit office, audit period, auditor number, and the audit periods and starting dates.

Because A & T had not obtained all the information it sought despite four years of effort, it filed a motion for leave to file a petition for writ of mandamus with this Court, asking us to direct the comptroller to release all the information it had requested. The comptroller urges us not to exercise jurisdiction, arguing both that A & T's petition presents unresolvable fact issues and that a district court is the proper forum for TORA-based mandamus actions. We disagree on both points.

## II.

District courts are always the courts of exclusive original jurisdiction for mandamus

---

1. The comptroller took no other action, but has continued to resist disclosing the information he believes is confidential. We note that the legislature recently enacted two TORA provisions. They state that a governmental body may file suit against the attorney general in order to resist the disclosure of information that the attorney general has opined to be public information, but that no such suit may be brought against the member of the public requesting the information. *See* Act of June 14, 1995, S.B. 636 § 1, 74th Leg., R.S. (to be codified at TEX.GOV'T CODE §§ 552.324, 552.325). Because the two provisions are not effective until August 28, 1995, they have no bearing in the present mandamus proceeding, nor would they have affected our disposition if they had been in effect.

proceedings unless the constitution or a law confers such jurisdiction on another tribunal. *See* TEX. CONST. art. V, § 8; TEX.GOV'T CODE § 24.011 (conferring mandamus authority on district courts). TORA does not specify which courts have jurisdiction over mandamus proceedings initiated to enforce the Act. *See* TEX.GOV'T CODE § 552.321. Neither the constitution nor any other statute outside TORA discusses what courts have jurisdiction over mandamus actions to compel disclosure of public information under TORA. Consequently, district courts ordinarily will have jurisdiction over TORA-based mandamus actions. *See, e.g., Texas Dep't of Pub. Safety v. Gilbreath,* 842 S.W.2d 408 (Tex. App.—Austin 1992, no writ) (involving a TORA-based mandamus action against a state department); *Johnson v. Lynaugh,* 789 S.W.2d 704, 706 (Tex.App.—Houston [1st Dist.] 1990, orig. proceeding) (involving a TORA-based mandamus action against the director of the department of criminal justice, an official who is not an executive officer within the constitution).

█ The problem with jurisdiction arises when the respondent is an executive officer named by the constitution. Among the heads of state departments and agencies, the constitution identifies seven officials as executive officers. *See* TEX. CONST. art. IV, § 1. These are the governor, the lieutenant governor, the secretary of state, the comptroller of public accounts, the treasurer, the commissioner of the general land office, and the attorney general. *Id.* For mandamus proceedings against executive officers, sections 3 and 8 in article V of the constitution allowed the legislature to create an exception to district courts' ordinary exclusive original jurisdiction. *See id.* art. V, § 8 (providing for exclusive original district court jurisdiction over "all actions, proceedings, and remedies, except in cases where exclusive ... original jurisdiction may be conferred by this Constitution or other law"); *see id.* art. V, § 3 (stating that the "Legislature may confer original jurisdiction on the Supreme Court to issue writs of ... mandamus in such cases as may be specified"). Under the authority of these two sections in article V, the legislature conferred exclusive original jurisdiction on this Court over mandamus proceedings against executive officers, except for the governor, in section 22.002(c) of the Government Code. That section states:

> Only the supreme court has the authority to issue a writ of mandamus or injunction ... against any of the officers of the executive departments of the government of this state to order or compel the performance of a judicial, ministerial, or discretionary act or duty that, by state law, the officer or officers are authorized to perform.

TEX.GOV'T CODE § 22.002(c). Thus, district courts generally have no jurisdiction over executive officer respondents. Any exception to this rule would require express statutory authorization by the legislature naming district courts as the proper fora. *See id.* § 552.353(b)(3).

Under the current statutory scheme, when a relator seeks to compel an executive officer to perform duties imposed by law, generally this Court alone is the proper forum. We have long followed the dictates of section 22.002(c) of the Government Code by exercising our jurisdiction in mandamus proceedings in which an executive officer has allegedly failed to perform his legal duties. *E.g., Houston Chronicle Pub. Co. v. Mattox,* 767 S.W.2d 695 (Tex.1989) (orig. proceeding) (seeking to compel the attorney general to render an open records opinion); *Jessen Assocs., Inc. v. Bullock,* 531 S.W.2d 593 (Tex. 1975) (orig. proceeding) (seeking to compel the comptroller to issue a warrant for payment of architects' services); *Bullock v. Calvert,* 480 S.W.2d 367 (Tex.1972) (orig. proceeding) (seeking to require the comptroller to pay the costs of a party primary election); *Trinity River Auth. v. Carr,* 386 S.W.2d 790 (Tex.1965) (orig. proceeding) (seeking to force the attorney general to approve a river authority's revenue bonds); *Gordon v. Lake,* 163 Tex. 392, 356 S.W.2d 138 (1962) (orig. proceeding) (seeking to compel the secretary of state to file a corporate charter); *County of Cameron v. Wilson,* 160 Tex. 25, 326 S.W.2d 162 (1959) (orig. proceeding) (seeking to require the attorney general to approve the issuance of county revenue bonds); *Union Cent. Life Ins. Co. v. Mann,* 138 Tex. 242, 158 S.W.2d 477 (1941) (orig. proceeding)

(seeking to force the attorney general and comptroller to refund illegally-assessed taxes the petitioner had paid on policy premiums it received); *Manion v. Lockhart,* 131 Tex. 175, 114 S.W.2d 216 (1938) (orig. proceeding) (seeking to compel the treasurer to pay escheated funds to an heir); *Corsicana Cotton Mills, Inc. v. Sheppard,* 123 Tex. 352, 71 S.W.2d 247 (1934) (orig. proceeding) (seeking to compel the comptroller and treasurer to refund erroneously paid franchise taxes); *Jernigan v. Finley,* 90 Tex. 205, 38 S.W. 24 (1896) (orig. proceeding) (seeking to force the comptroller to issue a warrant for county school funds). If A & T had petitioned for mandamus relief against the comptroller in district court, that court would have had little difficulty in determining that it should dismiss the petition for want of jurisdiction over the comptroller pursuant to section 22.002(c) of the Government Code.

In this case, we alone have jurisdiction to hear A & T's petition to compel the comptroller to perform his duties under TORA and to disclose public records pertaining to corporations which pay franchise tax. The comptroller is one of the officials the constitution identifies as an executive officer. TEX. CONST. art. IV, § 1. He is also the officer TORA directs to comply with requests for public records. TORA states:

> The chief administrative officer of a governmental body is the officer for public records.... [who] shall promptly produce public information ... on application by any person to the officer.

TEX.GOV'T CODE §§ 552.201(a), 552.221(a). The chief administrative officer must produce public records upon request or he will be subject to TORA's penalties for non-compliance. *See id.* § 552.203. Thus, A & T has petitioned for relief against the proper party, the comptroller, who has the legal obligation to perform the duties under TORA. Mandamus is the proper remedy under TORA to compel disclosure of records. *See id.* § 552.321. Therefore, it follows that this Court alone has jurisdiction. *See Pickle v. McCall,* 86 Tex. 212, 24 S.W. 265, 266 (1893) (orig. proceeding) (stating that if mandamus is the proper remedy and if the respondent is

an executive officer, we have original jurisdiction).

We have long recognized that when the legislature authorizes us by statute to exercise original jurisdiction in mandamus proceedings involving the comptroller, we will do so in accordance with the principles of law governing the writ. For example, in *Pickle,* we stated:

> The statute[2] authorizes this court to issue writs of mandamus against any officer of the state government except the governor, and ... it must be presumed that *the legislature,* aware of the rules of law applicable to the subject, *intended to confer such jurisdiction* as was necessary to that end. The power to do this the constitution gave, and it is evident that in the enactment of the statute in question the legislature intended to exercise that power.... [T]here can be no doubt that the comptroller of public accounts is a state officer ... of the executive branch of the state government.... The statute under consideration *was evidently intended to confer, and does confer,* upon this court, an *original jurisdiction* such as it was intended the legislature should have power to confer.

*Id.* at 265–66 (emphases added). We follow the rationale of *Pickle* and similar cases, *see Jessen,* 531 S.W.2d at 602, *Bullock,* 480 S.W.2d at 368, *Corsicana Cotton,* 71 S.W.2d at 251, and *Jernigan,* 38 S.W. at 25, and exercise jurisdiction over the present mandamus action involving the comptroller.

Section 22.002(c) of the Government Code states, "Only the supreme court has the authority to issue a writ of mandamus ... against any of the officers of the executive departments...." The legislative intent evinced by the plain language of this section supports our decision to exercise jurisdiction in A & T's mandamus action against the comptroller. *See Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 352 (Tex.1990) (asserting that when a statute is unambiguous, this Court determines legislative intent by reference to the "plain and common" meaning of its language). Our original jurisdiction exists when there is "some special reason for its

---

**2.** TEX.REV.CIV.STAT. art. 1012 (1892) (current version codified at TEX.GOV'T CODE § 22.002(a)).

exercise," *Betts v. Johnson,* 96 Tex. 360, 73 S.W. 4, 5 (1903) (orig. proceeding), and to preserve the separation of powers between the branches of state government. We have been empowered to grant writs against executive officers because a mandamus proceeding against one of them ordinarily involves questions of general public import. *See id.* The dictates of section 22.002(c) of the Government Code cannot be ignored. We conclude that the legislature intended this Court to exercise its jurisdiction over executive officers, in part because an open records request that an executive officer has resisted may well have general significance and require a speedy remedy.

## III.

■ A & T asks us to compel the comptroller to release information about corporations which have paid franchise taxes since 1979 (or as far back as the comptroller retains records), condensed as follows:

1) Taxpayer identity:
   (a) the taxpayer's name, taxpayer number, and the full address of each taxpayer which paid franchise tax and as to which the comptroller assessed a deficiency or issued a tax "warrant" or refund,
   (b) the taxpayer's SIC code, and
   (c) the date the taxpayer's charter was terminated or cancelled.

2) Audit information:
   (a) the audit period (including the date the taxpayer's name appeared on the list of prospective audits, the date the audit was assigned, the date it began, and the date it was completed),
   (b) the reason for the audit,
   (c) the audit method,
   (d) the audit group,
   (e) the taxpayer's primary and secondary errors,
   (f) the assignment codes,

(g) whether the taxpayer agreed, disagreed, or was non-committal about the audit result,
   (h) the audit office, and
   (i) the auditor's number.

3) The amount of tax deficiency assessed or the amount of tax refunded. If refunded, the warrant number and its date of issue.[3]

A & T also requests the identities of taxpayers targeted for prospective audits in the comptroller's "generation list," presumably seeking as much of the foregoing information as is available on these taxpayers. The comptroller argues that even if we have jurisdiction over this mandamus proceeding under section 22.002(c) of the Government Code, we lack jurisdiction to resolve fact issues raised by A & T's request. We disagree with the comptroller's reasoning that leads him to conclude that A & T's petition necessitates findings of fact.

### A

A & T's request does not raise factual issues about the nature of the information sought. Determining whether the information A & T requests from the comptroller is confidential or public information solely involves construing the two statutes at issue, the Tax Code and TORA. TORA excepts from disclosure information which the constitution, a statute, or a judicial decision has declared confidential as a matter of law. TEX.GOV'T CODE § 552.101; *see* Spurgin, *The Texas Open Records Act,* 50 TEX.BAR J. 596, 596 (1987) (stating that TORA makes all records not specifically exempted by law available to the public). The questions for each category of information A & T seeks are: Is the information public under TORA? If so, has the constitution, a statute, or a judicial decision expressly declared it confidential? These are questions of law.

In construing the two statutes, we must give effect to the legislature's stated intent on how conflicts between TORA's open records mandate and the Tax Code's confiden-

---

**3.** Correspondence from the attorney general's office to the comptroller mentions that A & T also may have requested the names of franchise taxpayers assessed a penalty and the amounts of penalties assessed. Because the record does not include such a request, we do not examine the issue.

tiality provisions should be resolved. *See Industrial Found. v. Texas Indus. Accident Bd.*, 540 S.W.2d 668, 675 (Tex.1976) (stating that "the task of balancing the public's right of access to government records against potential abusers of the right has been made by the Legislature; the court's task is to enforce ... the Act"), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977). In 1973, beginning with the predecessor statute to TORA, the legislature enacted a scheme for determining what information is confidential and what is public. *See* Acts of June 14, 1973, 63rd Leg., R.S., ch. 424, 1973 Tex.Gen. Laws 1112–18 (enacting the Open Records Act of 1973, TEX.REV.CIV.STAT. art. 6252–17a (repealed 1993)). Under the prior Act and now under TORA, information collected or maintained by a governmental body is public information, including completed audit reports, investigations, and vouchers relating to the expenditure of funds controlled by the government. TEX.GOV'T CODE §§ 552.021, 552.022(1), 552.022(3). Moreover, TORA forcefully articulates a policy of open government. The Act declares:

> [I]t is the policy of this state that each person is entitled, unless otherwise expressly provided by law, at all times to complete information about the affairs of government and the official acts of public officials and employees.... The provisions of this chapter shall be liberally construed to implement this policy.

*Id.* § 552.001(a). This section concludes that TORA "shall be liberally construed in favor of granting a request for information." *Id.* § 552.001(b).

On the other hand, the Tax Code's confidentiality provisions expressly make certain otherwise public information confidential. Section 111.006 of the Tax Code states that "all information *secured, derived, or obtained by* the comptroller" from an examination of a taxpayer's records and business affairs is confidential. (Emphasis added.) Also, section 171.206 of the Tax Code states that franchise tax information "is confidential and may not be made open to public inspection"

(except for data in a public information report, *see* TEX.TAX CODE § 171.203). Specific franchise tax information that is confidential includes:

> (1) information that is *obtained from* a record or other instrument that is required ... to be filed with the comptroller; or
>
> (2) information, including information about the business affairs, operations, profits, losses, or expenditures of a corporation, *obtained by* an examination of the books and records ... of a corporation....

*Id.* § 171.206 (emphases added).

Under the foregoing standards, this Court can determine what mandamus relief A & T is entitled to, and which categories of the requested information should be disclosed by the comptroller under TORA.

## B

The comptroller argues that A & T's staff can deduce confidential information about taxpayers by combining knowledge about certain changes in the law with information about franchise taxpayers the comptroller would otherwise release as public information.[4] The comptroller points out that tax laws change on occasion, and that knowledge of a changed law in conjunction with data on the amounts of audits and refunds would allow A & T to make estimates about franchise taxpayers' financial condition and business affairs. The comptroller points to a 1991 change in the tax law, for example, which made the buyers of certain "machinery, equipment, and replacement parts or accessories" eligible for a twenty-five percent refund on the sales taxes they paid in 1990. *See* TEX.TAX CODE § 151.318(g), (h). He reasons that if A & T knows of this change in the law, it could use a taxpayer's name and refund amount to calculate the extent of the taxpayer's investment in manufacturing machinery and equipment, even though this information is made confidential by the Tax Code. The comptroller says that there is a fact question in each taxpayer's instance— whether information which should be confidential can be deduced by combining it with

---

4. According to the comptroller, A & T's staff includes a former senior staff auditor from the comptroller's office.

known changes in the law. Although we understand the comptroller's point of view, he errs in his construction of the Tax Code's confidentiality provisions in light of TORA's open records mandate.

■ The Tax Code prevents the disclosure of data "obtained" or "derived" from a taxpayer. *id.* §§ 111.006, 171.206. Confidentiality under the Tax Code thus turns on the identity of the *source* of the information. It makes confidential the information obtained or derived from *taxpayers*. The flaw in the comptroller's reasoning is that knowledge of changes in the tax laws is not information obtained or derived from taxpayers. A change in the law is a matter of public record. Its source is the legislature or the courts, not taxpayers' books or records. The Tax Code does not preclude the release of otherwise public information because someone can make deductions from it in light of publicly known changes in the law.

Moreover, neither the comptroller nor this Court may inquire whether A & T intends to use the information it requested to deduce otherwise privileged information about taxpayers. Under TORA, we may not consider the requesting party's purpose or use for the information. *See* TEX.GOV'T CODE § 552.222. The legislature enacted TORA to conform loosely to the federal Freedom of Information Act (FOIA). 5 U.S.C. § 552; Keeling, *Attempting to Keep the Tablets Undisclosed: Susceptibility of Private Entities to the Texas Open Records Act,* 41 BAYLOR L.REV. 203, 203 (1989). FOIA bars the government from examining the motives or interests of the party requesting the release of public information. 1 DAVIS, ADMINISTRATIVE LAW TREATISE § 5:6, at 321 (2d ed.1978) (stating that under FOIA the "required disclosure does not depend on the interest or lack of interest of the party seeking disclosure"). In sum, if the requested information is public under TORA and its source is not the taxpayer, the Tax Code cannot preserve its confidentiality, regardless of the requesting party's purpose for seeking it. TORA precludes a factual inquiry into what the party intends to do with disclosed information.

## C

The comptroller informed A & T in August 1994 that the following items are not confidential and would be released: records containing each franchise taxpayer's name, taxpayer number, full address, and SIC code; the audit period and starting date of audits; and the audit office and auditor number. We have two points to make about the items the comptroller has conceded are public information.

■ First, among other dates, A & T has requested the starting and ending dates for audits. The comptroller said he would provide the audit period, but now argues that providing both the starting and ending dates of an audit will reveal the audit's length and therefore indicate its seriousness. We doubt that the only reason an audit may take a long time is because of its "seriousness," since a prolonged audit would not be necessary to discover a relatively simple error resulting in a large or "serious" tax deficiency. Even assuming that an audit's length indicates its seriousness, that an audit may be serious reveals nothing about a taxpayer's business affairs, operations, or profits or losses. Thus, although the starting and ending dates together may indicate the seriousness of an audit, they are not confidential and should be released. *See* TEX.TAX CODE § 111.006(a)(1).

■ Second, TORA compels disclosure of public information that is in existence, but it does not require a government entity to prepare or assemble new information in response to a request. *See* TEX.GOV'T CODE § 552.021 (defining "public information" as that "collected, assembled, or maintained" by a government body); *Economic Opportunities Dev. Corp. v. Bustamante,* 562 S.W.2d 266, 268 (Tex.Civ.App.—San Antonio 1978, writ dism'd) (ruling that a government agency could not be required to make copies of documents no longer in its possession). Therefore, the comptroller can release only those records presently in existence.

The comptroller should immediately release the existing information it offered to A & T in August 1994, if not yet furnished. However, he may condition the release of information upon A & T's advance payment

or upon its posting of a bond for payment of the costs. *See* Tex.Gov't Code § 552.263 (allowing the officer for public records to require a bond or cash prepayment if the records request will be "unduly costly" and would "cause undue hardship" if the costs are not paid).

The comptroller challenges the remaining categories of information requested by A & T and listed below.

1) The date the taxpayer's charter was terminated or cancelled,

2) The date the taxpayer's name appeared on the list of prospective audits (the "generation list") and the date the audit was assigned (the "assignment date"),

3) The reason for the audit,

4) The audit method,

5) The audit group,

6) The taxpayer's primary and secondary errors,

7) The agreement code indicating whether the taxpayer agreed, disagreed, or was non-committal about the audit result,

8) The assignment codes,

9) The amount of tax deficiency assessed or refunded (if refunded, the warrant number and its date of issue), and

10) The generation list of future audits.

TORA identifies public information by category. *See id.* § 552.022 (entitled "Categories of Public Information; Examples"). Accordingly, we examine each category of information requested by A & T below. *See* Davis, *supra*, § 5:27, at 386 (quoting *Bell v. United States*, 563 F.2d 484, 487 (1st Cir.1977)) (rejecting an in camera review of specific documents under FOIA in favor of an "affidavit demonstrat[ing] by its sufficient description [that] the contested document logically falls within the category of the exemption indicated").

■ *Date of termination of taxpayer charters.* The secretary of state issues charters or certificates of incorporation, which are recorded public documents. *See* Tex.Bus. Corp.Act arts. 3.03(A)(3), 9.05 (1980 & Supp. 1995); Tex.Gov't Code § 552.022(15) (classifying as public information those matters which an agency's policies regard as open to the public). A corporation is subject to having its charter revoked or dissolved if the comptroller reports to the secretary of state that it has failed to pay "fees, franchise taxes or penalties." Tex.Bus.Corp.Act art. 7.01. The comptroller's reports are a "completed report, audit, [or] evaluation" made by and for a governmental body, and thus are public under TORA. Tex.Gov't Code § 552.022(1). The secretary of state thereafter assembles, issues, and maintains the certificates or decrees of dissolution. Tex.Bus.Corp.Act art. 3.03(A)(3), 7.01(E). These documents are thus public information. *See* Tex.Gov't Code § 552.021(a). Neither the constitution nor any statute or judicial decision makes the corporate charters or the certificates and decrees of dissolution confidential. Therefore, the comptroller should produce from his records the date on which corporate charters have been revoked or dissolved, or the most comparable date he has in his possession.

■ *Date the taxpayer's name appeared on a generation list and the assignment date.* A & T has requested specific dates within the overall audit period. Although the comptroller conceded that he would provide information about the audit period, he specifically offered to furnish only the date on which audits began. The comptroller argues that the dates when a taxpayer's name appeared on the generation list and when an audit was assigned are confidential, because they reflect internal deliberations within the comptroller's office, an agency charged with law enforcement. We agree.

The generation list date and the assignment date reveal decision points in the comptroller's deliberative processes regarding audits. When an audit is planned or in progress, these decision-point dates are contained within an "audit working paper," and are thus exempt from disclosure under TORA. *See id.* § 552.116 (excepting from disclosure "[a]n audit working paper of the state auditor").

■ In addition, release of these pre-audit dates would be very informative to taxpayers facing an upcoming audit. Their disclosure could well thwart the purposes of a subsequent audit and would seriously interfere with the comptroller's efforts to investi-

gate and enforce the tax laws. Taxpayers that learn they are likely subject to an audit in the near future could easily tamper with, cover up, or "lose" corporate records to prevent an audit from detecting wrongdoing. Section 552.108 of TORA specifically excepts from disclosure information which would reveal law enforcement techniques to the public, unduly interfere with law enforcement, and make it more difficult for an agency to do its job. *Id.* § 552.108; *Morales v. Ellen,* 840 S.W.2d 519, 526 (Tex.App.—El Paso 1992, writ denied); *see Houston Chronicle Pub. Co. v. City of Houston,* 531 S.W.2d 177, 185 (Tex.Civ.App.—Houston [14th Dist.] 1975) (ruling that an offense report was a confidential internal record of a law enforcement agency), *writ ref'd n.r.e.,* 536 S.W.2d 559 (Tex.1976) (per curiam).

Although the attorney general has construed section 552.108 narrowly, so as to except from disclosure only the records of governmental agencies engaged in *criminal* law enforcement, we have not had the opportunity to construe the breadth of TORA's law enforcement exception. In doing so today, we are mindful that "franchise taxes paid by corporations constitute an important item in the revenue collected by the State for the maintenance of the State government and its institutions." *Isbell v. Gulf Union Oil Co.,* 147 Tex. 6, 209 S.W.2d 762, 765 (1948); *accord State v. Wynne,* 134 Tex. 455, 133 S.W.2d 951, 956 (1939), *cert. denied,* 310 U.S. 659, 60 S.Ct. 1094, 84 L.Ed. 1422 (1940). In addition, we note that section 552.108 serves the same function as an exception to the open records mandate in section 552(b)(7) of FOIA.[5] 5 U.S.C. § 552(b)(7). FOIA's law enforcement exception prevents the disclosure of investigatory records which would

reveal law enforcement methods, techniques, and strategies, including those the IRS uses to collect federal taxes. *See Pope v. United States,* 599 F.2d 1383, 1386 (5th Cir.1979); *Williams v. IRS,* 479 F.2d 317, 318 (3d Cir.), *cert. denied sub nom., Donlon v. IRS,* 414 U.S. 1024, 94 S.Ct. 448, 38 L.Ed.2d 315 (1973); DAVIS, *supra,* § 5:39, at 429–35. Since TORA and FOIA share a presumption in favor of open government records and yet both except from disclosure those records that must remain confidential for effective enforcement of the tax laws, we construe section 552.108 of TORA to have the same scope as section 552(b)(7) of FOIA. Therefore, we conclude that section 552.108 excuses the comptroller from releasing the generation list date or the assignment date of audits that have not yet been concluded. We overrule A & T's request for mandamus relief seeking the disclosure of these dates.

As for audits that are complete, revelation of the pre-audit generation dates and assignment dates are of little consequence, and the comptroller should release them to A & T. Once audits are completed, it would no longer serve the purpose of TORA's "audit working paper" exception to keep the scheduling of past audits confidential. Also, it would not serve the purpose of TORA's law enforcement exception. TEX.GOV'T CODE § 552.108. The release of the scheduling dates in past audits cannot provide other taxpayers, who are unaware that they will be audited in the future, with any information that they could use to thwart the comptroller's enforcement of the tax laws.

■ *Reason for audit.* A & T requests the comptroller to disclose the reason it conducts each audit. The comptroller can select

---

**5.** This section states that FOIA "does not apply to matters that are":

> *records or information compiled for law enforcement purposes,* but only to the extent that the production of such law enforcement records or information (A) *could reasonably be expected to interfere with enforcement proceedings,* (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or

> any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation,.... information furnished by a confidential source, (E) *would disclose techniques and procedures for law enforcement investigations or prosecutions ... if such disclosure could reasonably be expected to risk circumvention of the law,* or (F) could reasonably be expected to endanger the life or physical safety of any individual....

> 5 U.S.C. § 552(b)(7) (Supp.1995) (emphases added).

from several reasons for doing so. For scheduled upcoming audits and those in progress, these reasons are part of audit working papers, exempt from disclosure until the audits are completed. *See* TEX.GOV'T CODE § 552.116. More importantly, the reasons for performing an audit reflect that the comptroller uses audits to further his law enforcement objectives. They are thus made confidential not by the Tax Code, but by section 552.108 of TORA, which excepts from disclosure those records generated by the comptroller in the process of enforcing the tax laws. *See id.* § 552.108.

TORA does not require the comptroller to disclose the reasons for auditing franchise taxpayers, since revealing this information not only reflects the internal deliberative processes of the agency but also "tips his hand." The comptroller's efforts to enforce the tax laws are successful in part because taxpayers do not know what provokes an audit and what does not. The comptroller's effectiveness will decrease if the reasons for conducting an audit are disclosed to the public. Therefore, the comptroller should disclose the fact of completed audits, *see id.* § 552.022(1), but A & T's petition for mandamus relief to compel the disclosure of the reasons for which audits were conducted is overruled.

■ *The audit method and the audit group.* The audit method and audit group remain confidential before, during, and after the comptroller undertakes taxpayer audits. *See id.* §§ 552.108, 552.116. Selecting an audit method constitutes the comptroller's choice about the strategy that he will use in an audit. Similarly, the basis for an audit's assignment to a certain group involves the comptroller's decision on how to maximize staff resources for law enforcement. Auditor groups within the comptroller's office specialize in certain types of audits. Consequently, revelation of the groups would allow taxpayers to ascertain, based on which group audits them, what they are being audited for prior to the completion of an audit. Effective enforcement of the tax laws rests in part on a taxpayer's inability to predict the approach of a tax examination and the focus of an audit. Therefore, since disclosure of the choice of an audit method and the audit group will jeopardize the comptroller's effectiveness, these categories of information are excepted from release by TORA. *See id.* § 552.108.

■ *Primary and secondary errors of a taxpayer.* The data an auditor uses to calculate the proper amount of tax is "obtained from" and "derived" from an examination of confidential tax records. An auditor next identifies the taxpayer's primary and secondary errors. The primary error reflects "the source of the largest portion of the tax adjustment," and the secondary error reflects the "second largest portion of the tax adjustment." Thus, an auditor's error designations are short-hand descriptions for specific aspects of the taxpayer's business affairs which it failed to accurately report. For example, a taxpayer may have failed to report all of its sales, viewed certain items as nontaxable which were subject to tax, omitted a report of items given away for promotional purposes, or failed to report taxable purchases. Disclosing the precise nature of the errors will reveal information "derived from" the taxpayer records, and will thereby violate the Tax Code's confidentiality provision. *See* TEX.TAX CODE § 111.006(a)(2). We overrule A & T's petition for mandamus relief to compel the disclosure of taxpayers' primary and secondary errors.

■ *The taxpayer's response to an audit.* Whether a taxpayer agreed, disagreed, or was non-committal about an audit's results is not among TORA's categories of public information. *See* TEX.GOV'T CODE § 552.022. In addition, whether a taxpayer is pleased or unhappy with the results of an audit is unquestionably "information . . . obtained by the comptroller . . . during the course of an examination of the taxpayer's . . . officers, or employees . . . ." TEX.TAX CODE § 111.006(a)(2). The sole method by which a corporation can express an opinion about an audit's results is through its officers or employees. Therefore, because TORA does not make this information public and the Tax Code mandates its confidentiality, we overrule A & T's request for mandamus relief to compel the disclosure of taxpayers' responses to an audit.

■ *The assignment codes.* A & T requests the code assigned to each audit out of nine possible options for why the comptroller assigns an audit. Two options identify when the comptroller has assigned an audit to investigate for civil fraud. A third option reflects the comptroller's assignment of an audit to investigate for criminal prosecution. For two reasons, these codes and the information represented therein is not public information. First, source code and documentation geared to a specific computer program is not subject to TORA's provisions. The numbers 01 through 09, which mean nothing in themselves, are codes used in the comptroller's internal audit form and are geared to the assignment field in the comptroller's computer programs. TORA does not compel the codes' disclosure.

Second, the codes' meanings are confidential. To someone who knows them, the assignment codes reveal the comptroller's deliberative processes dealing with law enforcement and prosecution. *See* Tex.Gov't Code § 552.108. Because TORA precludes the disclosure of law enforcement information which a government agency internally represents by a code, both the information and its representative code are confidential. We overrule A & T's request for the assignment codes.

■ *Amount of tax deficiency assessed or amount of tax refunded; if refunded, the warrant number and date of issue.* TORA exempts from disclosure information made confidential by statute, as well as by the constitution or judicial decision. Tex.Gov't Code § 552.101. The Tax Code is such a statute. It protects from disclosure to the public all information obtained or derived from an examination of a taxpayer. *See* Tex. Tax Code § 111.006. TORA directs that its provisions be liberally construed. *See id.* § 552.001. The Tax Code contains no such instruction. Therefore, we determine whether deficiency assessments and refunds are public information by giving a narrow reading to the Tax Code's confidentiality provisions and a liberal reading to TORA.

■ If TORA's descriptions of what constitutes public information stood alone, we would conclude that the tax deficiency assessments and refund warrants are public records. A deficiency assessment is the result of a completed audit by a state agency, and a refund warrant is a voucher relating to the disbursement of funds by the government.

On the other hand, an auditor relies upon information furnished by a taxpayer in order to compute the *amounts* of deficiencies or the *amounts* of tax which was overpaid. Section 111.008(a) of the Tax Code states that "the comptroller may compute and determine the amount of tax to be paid from information contained in the [taxpayer's] report." Sections 111.104 and 111.105 of the Tax Code direct the comptroller to calculate an excess amount of tax, entitling a taxpayer to a refund or a credit against tax due, based on the written grounds submitted by the taxpayer and on evidence the taxpayer presents at a tax refund hearing. Therefore, the *amounts* of assessed deficiencies, refunds, or credits are derived from taxpayer-furnished information, and are thus confidential. However, we cannot overlook that TORA expressly states that "a completed report, audit, evaluation, or investigation" and related vouchers for the expenditure of government-controlled funds are public information. *See* Tex.Gov't Code § 552.022(1), (3). We conclude that it strikes the proper balance between the Tax Code and TORA for the comptroller to disclose that audits resulted in a deficiency assessment or refund warrant, but not to disclose the amounts of an assessment or refund. The fact of a deficiency or a refund reveals nothing about taxpayers except that they miscalculated their tax.[6] Therefore, the comptroller should release a list of taxpayers whose audits resulted in a deficiency assessment or refund. However, we overrule A & T's request for mandamus

---

**6.** We overruled A & T's request for disclosure of taxpayers' primary and secondary errors because they arise from taxpayers' miscalculations about specific aspects of their business affairs. By contrast, the mere fact of a deficiency or refund does not disclose specific information about aspects of taxpayers' financial condition or business activities.

relief to compel the comptroller to disclose the amounts of deficiencies or refunds.

The comptroller should also disclose refund warrant numbers and their date of issue to A & T, since these items are in no sense information derived from taxpayers. *See* TEX.GOV'T CODE § 552.022(3). Although A & T may later request the comptroller to reveal the amounts of the refunds represented by each warrant number, as stated, this information is confidential.

*Generation list of future audits.* The comptroller's "generation list," the working list of taxpayers prospectively to be audited, captures a policy-based deliberation in the making. Disclosure of the generation list would profoundly interfere with the comptroller's law enforcement and tax collection efforts for obvious reasons. We overrule A & T's petition for the disclosure of the comptroller's generation list of future audits. *See id.* § 552.108.

In conclusion, we hold that the comptroller should produce the categories of franchise taxpayer information made public by TORA. We anticipate that in accordance with this opinion the comptroller will disclose, in addition to the information which he has agreed to provide, the following information: the date on which corporations' charters were revoked or dissolved (or a related date in his possession), the generation list date and the assignment date of *completed* audits, and a list of *completed* audits since 1979 that resulted in a deficiency or a refund (including refund warrant numbers and date of issue). Should the comptroller fail to disclose this information to A & T, a writ of mandamus will issue.

We otherwise overrule A & T's petition for writ of mandamus against the comptroller. The comptroller need not disclose the generation list dates or the assignment dates for audits which have *not* been completed, the reasons for any audits conducted since 1979, the audit method and group, taxpayers' primary and secondary errors, the taxpayers' responses to their audits, the assignment codes, the amounts of assessed deficiencies or refunds, or the generation list of prospective audits.

## IV.

Although we were able to resolve the issues raised in this proceeding, we encourage the legislature to take another look at the civil enforcement provision of TORA. *See* TEX.GOV'T CODE § 552.321. Currently, section 552.321 authorizes mandamus actions against a governmental body, although TORA imposes the duty of compliance upon the public records officer. *See id.* §§ 552.201(a), 552.221(a). A literal application of the mandamus provision is thus unworkable. A governmental body has no duty to perform what a writ of mandamus would order—the disclosure of public records in compliance with TORA. This discrepancy can be overlooked in most cases, and courts can treat petitions for writ of mandamus against governmental bodies and against public records officers interchangeably. However, as this case illustrates, in a few proceedings the exact identity of the respondent matters for purposes of jurisdiction.

As explained in Part II of this opinion, section 552.321 of TORA triggers this Court's exclusive original jurisdiction in actions against executive officers because it names mandamus as TORA's sole civil enforcement remedy. We invite the legislature to consider whether mandamus is the appropriate remedy against a government officer or agency, or whether a court order and/or judgment declaring the requested records to be public information would be adequate. We further suggest that the legislature exercise its constitutional authority to specify which courts are to have jurisdiction over remedial actions to enforce TORA. *See* TEX. CONST. art. V, §§ 3, 8.

We hold that a writ of mandamus will issue should the comptroller fail to furnish public information in accordance with this opinion.

HECHT, Justice, joined by CORNYN and GAMMAGE, JJ., dissenting.

The threshold issue is whether this Court, the Supreme Court of Texas, is the only court in the State which can review refusals of officers of the Executive Department to disclose information requested under the Texas Open Records Act, TEX.GOV'T CODE

§§ 552.001–.353. As the Court reads the Act:

♦ Only the Supreme Court can review nondisclosure decisions by six State officers—the Lieutenant Governor, Secretary of State, Comptroller of Public Accounts, Treasurer, Commissioner of the General Land Office, and Attorney General.

♦ This is appropriate "because an open records request that an executive officer has resisted may well have general significance and require a speedy remedy." *Ante* at 674.

♦ A district court (or county court with concurrent jurisdiction) may review nondisclosure decisions of every other governmental body subject to the Act.

♦ Nondisclosure decisions of the Governor may be reviewed only by a district court (or county court with concurrent jurisdiction), or not at all (the Court does not say which), even though the Governor must comply with the Act and could be charged with a misdemeanor for failure to do so.

♦ The Legislature really ought to reconsider all this.

In other words, the "general significance" of a few state officers' refusals to disclose information requires "a speedy remedy" that only the Supreme Court of Texas can provide, but the Governor's refusal to disclose information is either beyond review altogether or is less significant and can be dawdled over—and while the Legislature clearly intended this scheme of review and even had a good reason for it, the Legislature ought to try something different. These are but a few of the anomalies in the Act as the Court sees it.

I do not agree that the Court's construction of TORA is reasonable or even plausible. It is certainly deplorable policy. This Court has plenty to do without taking upon itself *sole* responsibility for reviewing every open records dispute involving six large state offices. Even if we needed this extra burden (which cannot seriously be suggested), there is no reason why the Court should assume it for these six offices and not for everyone subject to TORA. TORA, as the Court portrays it, is a freak, but not because it was misbegotten by the Legislature; rather, because it has been tortured by the Court. I

would hold that all refusals to disclose information made public by TORA may, and should, be reviewed by the district court, or a county court with concurrent jurisdiction. I therefore respectfully dissent.

**I**

TORA declares "the policy of this state that each person is entitled, unless otherwise expressly provided by law, at all times to complete information about the affairs of government and the official acts of public officials and employees." Tex.Gov't Code § 552.001. The Act defines "public information", *id.* §§ 552.021–.123, designates the chief administrative officer of a governmental body as the officer for public records, *id.* § 552.201, and requires that officer to "promptly produce public information for inspection, duplication, or both, in the offices of the governmental body on application by any person to the officer", *id.* § 552.221(a). If a governmental body wishes to withhold information, it must timely request the Attorney General to opine on whether the information is subject to disclosure, *id.* § 552.301(a), failing which the information is presumed public, *id.* § 552.302. The Attorney General is required to "promptly render a decision", *id.* § 552.306(a), and if he refuses to do so he may be compelled by mandamus. *See Houston Chronicle Publishing Co. v. Mattox,* 767 S.W.2d 695, 697–698 (Tex.1989). If the Attorney General rules that information is public, the officer for public records or his agent must make it available to a person requesting it. Failure to comply is both official misconduct and a misdemeanor punishable by a fine of up to $1,000 and confinement for not more than six months. Tex.Gov't Code § 552.353(e) & (f). However, the officer or agent has an affirmative defense to prosecution if he "reasonably believed that public access to the requested records was not required" and—

not later than the 10th calendar day after the receipt of a decision by the attorney general that the information is public, filed a petition for a declaratory judgment, a writ of mandamus, or both, against the attorney general in a Travis County district court seeking relief from compliance

with the decision of the attorney general, and a petition is pending. *Id.* § 552.353(b)(3). It is also a defense to prosecution that someone other than the officer or agent (such as a person who supplied the information to the governmental body) has a pending "cause of action seeking relief from compliance with the decision of the attorney general". *Id.* § 552.353(c).

TORA also provides for civil enforcement:

A person requesting information or the attorney general may file suit for a writ of mandamus compelling a governmental body to make information available for public inspection if the governmental body refuses to request an attorney general's decision ... or refuses to supply public information or information that the attorney general has determined is a public record.

*Id.* § 552.321. Section 552.323(a) provides that "[i]n an action brought under Section 552.321 or Section 552.353(b)(3), the court may assess costs of litigation and reasonable attorney fees incurred by a plaintiff or defendant who substantially prevails." *Id.* § 552.323(a). In exercising this discretion, "the court shall consider whether the conduct of the governmental body had a reasonable basis in law and whether the litigation was brought in good faith." *Id.* § 552.323(b).

The term "governmental body" is used not only in the civil enforcement provisions but throughout the Act. TORA defines a "governmental body" as:

(1) a board, commission, department, committee, institution, agency, or office that is within or is created by the executive or legislative branch of state government and that is directed by one or more elected or appointed members;

\* \* \* \* \* \*

(10) the part, section, or portion of an organization, corporation, commission, committee, institution, or agency that spends or that is supported in whole or in part by public funds.

*Id.* § 552.003(a). It is important to note that a "governmental body" is an entity, not an individual. Thus, for example, the Office of Comptroller of Public Accounts is a "govern-mental body" within the meaning of TORA, while the Comptroller himself is not.

## II

As I have already observed, TORA permits either the person requesting information or the attorney general to file suit for a writ of mandamus compelling a governmental body to make information available for public inspection. *Id.* § 552.321. But nowhere does the Act prescribe where such suit must be filed. Thus, it may be filed in any court with jurisdiction.

## A

The district court has "exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." TEX. CONST. art. 5, § 8; *see* TEX.GOV'T CODE § 24.007. As part of this general grant of authority, district courts have jurisdiction to issue writs of mandamus "not dependent on the necessity to enforce a jurisdiction otherwise acquired." *Love v. Wilcox,* 119 Tex. 256, 28 S.W.2d 515, 519 (1930). Thus, the district court has jurisdiction to entertain mandamus proceedings brought under section 552.321 unless that jurisdiction is otherwise restricted by law as permitted by the Constitution.

The working assumption in a host of TORA cases has been that jurisdiction lies in the district court. *See, e.g., Shackelford v. City of Abilene,* 585 S.W.2d 665 (Tex.1979); *Industrial Found. of the South v. Texas Indus. Accident Bd.,* 540 S.W.2d 668, 672 (Tex. 1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977); *Moore v. Collins,* 897 S.W.2d 496, 498 (Tex.App.—Houston [1st Dist.] 1995, no writ); *City of San Antonio v. Texas Att'y General,* 851 S.W.2d 946, 947 (Tex.App.—Austin 1993, writ denied); *Hancock v. State Bd. of Ins.,* 797 S.W.2d 379, 380 (Tex.App.—Austin 1990, no writ); *A.H. Belo Corp. v. Southern Methodist Univ.,* 734 S.W.2d 720, 721–722 (Tex.App.—Dallas 1987, writ denied); *Hubert v. Harte–Hanks Texas Newspapers,* 652 S.W.2d 546, 547 (Tex.App.—Austin 1983, writ ref'd n.r.e);

*Houston Chronicle Publishing Co. v. City of Houston,* 531 S.W.2d 177, 182 (Tex.Civ. App.—Houston [14th Dist.] 1975), *writ ref'd n.r.e.,* 536 S.W.2d 559 (Tex.1976) (per curiam). One court has specifically held that the district court is the appropriate forum for a mandamus under the Act. *Johnson v. Lynaugh,* 789 S.W.2d 704, 706 (Tex.App.—Houston [1st Dist.] 1990, orig. proceeding) (mandamus relief sought against Executive Director of Texas Department of Criminal Justice); *see also Texas Dep't of Public Safety v. Gilbreath,* 842 S.W.2d 408, 410–411 (Tex.App.—Austin 1992, no writ); *Morales v. Ellen,* 840 S.W.2d 519, 522–523 (Tex.App.—El Paso 1992, writ denied).

The Court holds, however, that the district court's jurisdiction to issue mandamus under section 552.321 of TORA is limited by section 22.002(c) of the Government Code, which states:

> Only the supreme court has the authority to issue a writ of mandamus or injunction, or any other mandatory or compulsory writ or process, against any of the officers of the executive departments of the government of this state to order or compel the performance of a judicial, ministerial, or discretionary act or duty that, by state law, the officer or officers are authorized to perform.

This provision does limit the mandamus jurisdiction of the district court, but only as "against any of the *officers* of the executive departments", not the executive departments themselves. It is not clear who these officers are. *See Gordon v. Lake,* 356 S.W.2d 138 (Tex.1962) (Secretary of State); *United Production Corp. v. Hughes,* 152 S.W.2d 327 (Tex.1941) (Land Commissioner); *Herring v. Houston Nat'l Exch. Bank,* 113 Tex. 264, 253 S.W. 813, 815–816 (1923) (similar language in another statute not limited to officers listed in article I, section 4 of the Constitution); *see also Texas Liquor Control Bd. v. Continental Distilling Sales Co.,* 199 S.W.2d 1009, 1012–1013 (Tex.Civ.App.—Dallas 1947, writ ref'd n.r.e.) (limiting officers of the state to those listed in article I, section 4 of the Constitution). In any event, section 552.321 of TORA authorizes suits for mandamus against governmental bodies, not against government officers. As already noted, the term "governmental body" defined in TORA does not include individuals. Tex.Gov't Code § 552.003.

This distinction is significant. Section 22.002(a) of the Government Code states:

> The supreme court or a justice of the supreme court may issue writs of procedendo and certiorari and all writs of quo warranto and mandamus agreeable to the principles of law regulating those writs, against a district judge, a court of appeals or a justice of a court of appeals, or any officer of state government except the governor, the court of criminal appeals, or a judge of the court of criminal appeals.

We held long ago that "any officer of state government" does not include a board of officers, and therefore this Court lacks jurisdiction to mandamus such a board. *Betts v. Johnson,* 73 S.W. 4 (Tex.1903). The district court, however, may mandamus state boards. *Industrial Found. of the South,* 540 S.W.2d at 672.

Thus section 22.002(c) does not limit the district court's constitutional jurisdiction over mandamus proceedings against governmental bodies, as distinguished from government officials. Inasmuch as section 552.321 of TORA authorizes mandamus suits against governmental bodies, section 22.002(c) does not preclude such suits from being filed in the district court. Though TORA imposes responsibilities on public records officers and their agents as well as governmental bodies, it authorizes mandamus suits against governmental bodies only. The Legislature must be presumed to have recognized the distinction.

In fact, it has. When the Legislature has adopted a scheme of substantive rights and remedies, and conferred as part of that scheme original jurisdiction upon this Court, it has done so expressly. *See, e.g.,* Tex. Agric.Code § 57.103(b) (refusal by the Agricultural Development Board to approve a bond issue "solely on the basis of law" may be challenged by mandamus action in the Supreme Court); *id.* § 58.036 (payment of Texas Agricultural Finance Authority bonds or duties of Agriculture Commissioner with respect to those bonds may be enforced "in

the state supreme court by mandamus or other appropriate proceeding"); TEX.ELEC. CODE § 273.061 ("performance of any duty imposed by law in connection with the holding of an election or a political party convention" may be enforced by mandamus in the supreme court or a court of appeals); TEX. GOV'T CODE § 404.126(d) (payment of tax and revenue anticipation notes and duties associated therewith "may be enforced in the state supreme court by mandamus or other appropriate proceeding."); id. § 465.028 (payment of Texas National Research Laboratory bonds and associated duties of commission "may be enforced in the state supreme court by mandamus or other appropriate proceeding").

Allowing review of nondisclosure decisions in the district court is consistent with the general scheme of the Act. As already noted, section 552.353(b)(3) contemplates actions in the district court by government officers against the attorney general to avoid having to disclose information. Section 552.323(a) provides that "the court" may assess costs and attorney fees "[i]n an action brought under Section 552.321 or Section 552.353(b)(3)". In juxtaposing actions brought by governmental litigants resisting disclosure, and by litigants seeking to compel disclosure, and treating them alike for purposes of considering and awarding attorney fees, the statute implies that both types of actions can and should be brought in the same court.

**B**

The jurisdiction of this Court, the court of appeals, and constitutional and statutory county courts to entertain original actions for writs of mandamus is prescribed not by the Constitution but by statute. TEX. CONST. art. V, § 3 ("[t]he Legislature may confer original jurisdiction on the Supreme Court to issue writs of quo warranto and mandamus in such cases as may be specified, except as against the Governor of the State"); id. art. V, § 6 (besides appellate jurisdiction, the courts of appeals "shall have such other jurisdiction, original and appellate, as may be prescribed by law"); id. art. V, § 16 ("[t]he County Court has jurisdiction as provided by law",

and "County Court judges shall have the power to issue writs necessary to enforce their jurisdiction"); id. art. V, § 1 ("[t]he Legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof"). The Legislature has not conferred on the courts of appeals or the constitutional county courts, or on the statutory county courts in general, the broad mandamus jurisdiction necessary to review nondisclosure decisions under TORA. TEX.GOV'T CODE § 22.221 (courts of appeals); id. § 25.0003 (statutory county courts); id. §§ 26.050–.051 (constitutional county courts). The jurisdiction of some statutory county courts is concurrent with that of the district court, however, and in those instances, the county courts would have jurisdiction of mandamus actions under TORA. E.g., id. § 25.0732 (El Paso county courts at law).

This Court's mandamus jurisdiction, as it pertains to reviewing nondisclosure decisions under TORA, is found in section 22.002(a) of the Government Code, which, as noted above, authorizes the Court to issue writs of mandamus against "any officer of state government except the governor". This Court has long limited its construction of an "officer of the state government" in this provision to the heads of state departments who are charged with the general administration of state affairs and must keep their offices at the seat of state government. See Chemical Bank & Trust Co. v. Falkner, 369 S.W.2d 427, 430–431 (Tex.1963) (mandamus granted against state banking commissioner, citing Betts ). The Court's jurisdiction does not extend to governmental bodies, as opposed to government officials. Betts, 73 S.W. at 5. If section 552.321 of TORA means that TORA decisions can be reviewed only in mandamus actions against governmental bodies and in no other way, then the general grant of jurisdiction in section 22.002(a) could not apply and this Court would have no jurisdiction in this case.

I think section 552.321 rather clearly imposes no such limitation. It is entirely permissive: "[a] person ... may file suit for a writ of mandamus ... [against] a governmental body...." There is no reason to

limit review to one means, especially when other interested parties are not similarly limited by the Act. *See* TEX.GOV'T CODE § 552.353. Neither the language nor any apparent purpose of section 552.321 prohibits a person from filing suit for a writ of mandamus against a government official. If the official is "an officer of state government" within the meaning of section 22.002(a), then this Court has jurisdiction to grant relief.

As a rule, however, this Court does not exercise its mandamus jurisdiction when the same relief can be obtained in a lower court, unless the necessity of immediate relief or the importance of the issues to the State as a whole justify this Court's intervention. *Hidalgo County Water Improvement Dist. No. 2 v. Blalock*, 157 Tex. 206, 301 S.W.2d 593, 594 (1957); *Love*, 28 S.W.2d at 521; *see also LaRouche v. Hannah*, 822 S.W.2d 632, 633–634 (Tex.1992). Because nondisclosure decisions under TORA can be fully reviewed by the district court, this Court should not exercise its original jurisdiction.

### III

Just as section 552.321 is permissive rather than exclusive and does not prohibit mandamus actions against individuals, it also does not prohibit remedies otherwise available.

The Texas Uniform Declaratory Judgments Act provides that "[a] person ... whose rights ... are affected by a statute ... may have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights ... thereunder." TEX.CIV.PRAC. & REM.CODE § 37.004(a). Litigants have used declaratory judgments in open records suits since TORA's inception. Persons seeking information under TORA have sometimes sued for declaratory judgment rather than mandamus. *E.g., City of San Antonio*, 851 S.W.2d at 947; *City of Abilene v. Shackelford*, 572 S.W.2d 742, 743 (Tex.Civ.App.—Eastland 1978), *rev'd on other grounds*, 585 S.W.2d 665 (Tex.1979); *Houston Chronicle Publishing*, 531 S.W.2d at 181. Others have sued for declaratory judgment in addition to mandamus. *Ellen*, 840 S.W.2d at 519; *Southern Methodist Univ. v. Times Herald Printing Co.*, 729 S.W.2d 129 (Tex.App.—Dallas 1987,

no writ); *Calvert v. Employees Retirement Sys.*, 648 S.W.2d 418 (Tex.App.—Austin 1983, writ ref'd n.r.e.). Suits for declaratory judgment clearly afford disputants a means of resolving controversies under TORA.

In fact, TORA envisions suits for declaratory judgment as part of its general scheme. Section 552.353(b)(3) allows a public records officer or his agent to sue for declaratory judgment in a Travis County district court to establish an affirmative defense to criminal prosecution for refusing to release records. There is little question that a person requesting information will obtain it if successful in a declaratory judgment action, as the government official's continued failure to disclose the information following final judgment would result in criminal penalties under TORA. TEX.GOV'T CODE § 552.353. Moreover, it may generally be supposed that state officials will follow the law. *Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994).

The availability of review of a nondisclosure decision by action for declaratory judgment would ordinarily preclude relief by mandamus action. To effectuate its strong policy of openness in government, TORA gives litigants a choice of remedies. The availability of relief by action for declaratory judgment, however, is a further reason why this Court should not exercise its jurisdiction in this case.

### IV

TORA's review scheme as I have described it has the virtue of simplicity. Every refusal to disclose information can first be reviewed in the district court by suit either for mandamus or declaratory judgment, or both. Any factual issues raised can readily be resolved. Full appellate review can be afforded. *See Anderson v. City of Seven Points*, 806 S.W.2d 791, 792 n. 1, 794 (Tex.1991).

The Court's view of TORA's review scheme is complicated and confused. Review of the decisions of six state officials—the Lieutenant Governor, Secretary of State, Comptroller of Public Accounts, Treasurer, Commissioner of the General Land Office, and Attorney General—can be had only in

this Court. This is justified, according to the Court, because of the "general significance" of these officials' decisions and the necessity of a "speedy remedy". Review of the decisions of every other state official is committed to the district court. The Court makes no attempt to justify its generalization that refusals of the Comptroller to release public information are of more "general significance" than refusals of, say, the Commissioner of Education. Nor does it explain why one decision requires a speedier remedy than another, or why relief in this Court is speedier than relief in the district court. Certain issues under TORA are clearly committed to the district court. Tex.Gov't Code § 552.353. District courts are quite capable of reviewing significant open records decisions as well as insignificant ones, and of doing so as expeditiously as this Court.

The Court is not clear on whether nondisclosure decisions of the Governor can be reviewed only in the district court or not at all. If the former, the Court fails to explain why decisions of the Comptroller are of more "general significance" than those of the Governor, so that review by this Court is necessary in one case but not the other. If the latter—that is, if mandamus is the exclusive means of reviewing nondisclosure decisions, and mandamus does not lie against the Governor—the Court construes TORA to afford no relief except criminal punishment against one very large component of the Executive Department, the Governor's Office.

The Court's view is incongruous with TORA's scheme of judicial review. TORA allows government officials to sue the Attorney General both for a writ of mandamus and a declaratory judgment. Tex.Gov't Code § 552.353(b)(3). Persons seeking information from some governmental bodies may obtain judicial assistance from district courts. Id. § 552.321. Others, however, according to the Court, can obtain relief only from this Court.

In the Court's view, the Comptroller could sue the Attorney General in district court to avoid release of information. The Attorney General, however, could not countersue in district court, but only in the Supreme Court. The Court would also subject the Attorney General to concurrent suits in the district court and this Court based on different parts of the same controversy—depending on what party initiated the proceeding. If, for example, the Comptroller disputed part of an Attorney General's decision deeming some information public, and sought to avoid disclosure of that information, the Comptroller's remedy would be by a suit in district court in Travis County. If, however, the party requesting the decision was also unhappy with the Attorney General's decision, deeming other related information to be confidential, that party would be obliged to seek review by a mandamus action against the Comptroller in this Court. The Attorney General potentially could be a petitioner and a respondent in simultaneous actions, arising out of the same controversy and open records decision, in two separate courts. No logic supports splitting review of open records decisions between the district court and this Court. See Kidder v. Hall, 113 Tex. 49, 251 S.W. 497, 498 (1923) (dismissing, on several grounds, a mandamus proceeding seeking to compel Commissioner of Banking to allow a claim against an insolvent bank; although statute did not specify in which "court" to bring rejected claims, "[w]e know of no reason why the Legislature should have permitted contests of approved claims in one court, and have prescribed another court to establish rejected claims").

Perhaps most puzzling of all is the Court's Janus-faced view of whether TORA's review procedures are appropriate. Justifying this Court's exclusive review of nondisclosure decisions, the Court says:

> Our original jurisdiction exists when there is "some special reason for its exercise," ... and to preserve the separation of powers between the branches of state government. We have been empowered to grant writs against executive officers because a mandamus proceeding against one of them ordinarily involves questions of general public import.... We conclude that the legislature intended this Court to exercise its jurisdiction over executive officers, in part because an open records request that an executive officer has resisted may well

have general significance and require a speedy remedy.

*Ante* at 673–74. A few pages later the Court requests relief from the Legislature:

> We invite the legislature to consider whether mandamus is the appropriate remedy against a government executive or agency, or whether a court order and/or judgment declaring the requested records to be public information would be adequate. We further suggest that the legislature exercise its constitutional authority to specify which courts are to have jurisdiction over remedial actions to enforce TORA.

*Ante* at 681. I am at a loss to understand why the Court thinks the Legislature should reconsider a statutory scheme of judicial review when the Court believes that the Legislature intended to adopt the scheme, and also believes that the scheme serves an important purpose.

Construing TORA need not deform it. The Court's construction does just that, and for this reason alone is unjustified.

## V

The Comptroller's Office has refused to disclose all the information requested by A & T. As required by TORA, the Comptroller requested an Attorney General's opinion, which was at least partially favorable to A & T. After A & T filed this proceeding, the Attorney General withdrew his opinion, apparently in accordance with a policy of withdrawing open records opinions when litigation is pending. This Court casts itself in the position of reviewing A & T's requests without a factual record, relying solely on the briefs of counsel and oral argument. I do not believe TORA imposes upon this Court responsibility as sole arbiter of open records disputes involving the Lieutenant Governor, Secretary of State, Comptroller of Public Accounts, Treasurer, Commissioner of the General Land Office, and Attorney General.

I would deny the petition for writ of mandamus. Accordingly, I respectfully dissent.