OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



August 28, 2002

Mr. Jim Loyd
Executive Director
Texas Health Care Information Council
206 East Ninth Street, 19th Floor
Austin, Texas 78701

Opinion No. JC-0545

Re: Whether the Texas Health Care Information Council must provide a hospital with an opportunity to review and comment on certain data and analysis of that data before releasing it in response to a request for information about the hospital (RQ-0518-JC)

Dear Mr. Loyd:

You ask whether, under chapter 108 of the Health and Safety Code, the Texas Health Care Information Council must provide a hospital with an opportunity to review and comment on certain data and analysis of that data before releasing the data and analysis in response to a request for information about the hospital. We conclude that it must. We also conclude that data analysis or a report subject to section 108.011 of the Health and Safety Code is not a completed report under section 552.022(a)(1) of the Public Information Act before affected providers have been afforded an opportunity to review and comment.

Chapter 108 of the Texas Health and Safety Code requires the Texas Health Care Information Council (the "Council") to develop a statewide health care data collection system, to collect certain data, and to prepare reports based on that data. Section 108.006 directs the Council, among other things, to direct the collection, dissemination, and analysis of data under chapter 108; to contract with the Texas Department of Health to collect the data; to adopt policies and rules necessary to carry out chapter 108, including rules concerning data collection requirements; and to assure that public use data is made available and accessible to interested persons. *See* TEX. HEALTH & SAFETY CODE ANN. § 108.006(a)(1)-(3), (6) (Vernon 2001). Chapter 108 defines "public use data," the set of data that the Council must maintain that may be released to the public, *see id.*, as:

> patient level data relating to individual hospitalizations that has not been summarized or analyzed, that has had patient identifying information removed, that identifies physicians only by use of uniform physician identifiers, and that is severity and risk adjusted, edited, and verified for accuracy and consistency. Public use data may exclude some data elements submitted to the council.

*Id.* § 108.002(17) (Vernon Supp. 2002).

The Council collects data under sections 108.0065, 108.009, and 108.010. Section 108.0065 authorizes the Council to collect information about Medicaid managed care organizations at the direction of the Texas Health and Human Services Commission. *See id.* § 108.0065 (Vernon 2001). Section 108.009 provides for the general collection of data, and section 108.010 provides for the collection of provider quality data. *See id.* §§ 108.009, .010. The term "provider" refers to both physicians and health care facilities. *See id.* § 108.002(15) (Vernon Supp. 2002). The Council is required to prepare provider quality reports under section 108.010. Under section 108.011, it must prepare reports to the legislature, the governor, and the public on matters such as health care costs, the quality and effectiveness of health care, and access to health care, *see id.* § 108.011(b) (Vernon 2001); *see also id.* § 108.006(a)(9), and "reports that provide information relating to providers, such as the incidence rate of selected medical or surgical procedures," *see id.* § 108.011(c).

Sections 108.010 and 108.011 establish various procedures the Council must follow before releasing data, and section 108.013 provides for the confidentiality of certain information. *See id.* §§ 108.010(d)-(i), .011(d)-(i) (Vernon 2001), .013(c)-(d) (Vernon Supp. 2002). In addition, the Council is required to "establish a scientific review panel to review and approve requests for information other than public use data." *See id.* § 108.0135(a) (Vernon 2001). This requirement does not apply to the Council's use of data to prepare required reports. *See* Tex. Att'y Gen. Op. No. JC-0511 (2002). The Council is subject to the Public Information Act, TEX. GOV'T CODE ANN. ch. 552 (Vernon 1994 & Supp. 2002), "[s]ubject to the restrictions of this chapter." TEX. HEALTH & SAFETY CODE ANN. § 108.0045 (Vernon 2001); *see also id.* § 108.013(a) (Vernon Supp. 2002) (requiring Council to use data it receives "for the benefit of the public," and providing that "[s]ubject to specific limitations established by this chapter and council rule, the council shall make determinations on requests for information in favor of access.").

You explain that the Council has received a request for information from a legislator "for hospital-by-hospital admissions for treatment relating to trauma incidents."[1] The Council has also received a request from a member of the public regarding the number of deaths at a particular hospital in 1999 and 2000. *See* Request Letter, *supra* note 1. To respond to these requests, you state that the Council "must develop customized hospital-level information based on hospital discharge data contained in the Council's public use data file." *Id.* It is not clear from your request whether the Council will release public use data to respond to these requests or if the requests require the Council to analyze or summarize public use data in such a way that the data will lose its character as public use data. *See* TEX. HEALTH & SAFETY CODE ANN. § 108.002(17) (Vernon Supp. 2002) (defining "public use data" as "patient level data relating to individual hospitalizations *that has not been summarized or analyzed*") (emphasis added). Thus, we address the Council's duties with respect to both kinds of information. You do not ask whether the Council may or must respond to these requests, but rather what procedures the Council must follow to release the requested information under section 108.011 of the Health and Safety Code. *See* Request Letter, *supra* note

---

[1]Letter from Jim Loyd, Executive Director, Texas Health Care Information Council, to Honorable John Cornyn, Texas Attorney General at 1 (Mar. 1, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

1, at 1. Before turning to your specific questions, however, we address two other significant issues raised by your query.

First, your letter does not state whether the requests at issue were submitted to the Council verbally or in writing. If the Council receives a written request for information, then the Public Information Act (the "Act") applies "subject to the restrictions" of chapter 108. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 108.0045 (Vernon 2001) (Council is subject to the Public Information Act, TEX. GOV'T CODE ANN. ch. 552, "[s]ubject to the restrictions of this chapter"), .013(a) (Vernon Supp. 2002) (requiring Council to use data it receives "for the benefit of the public," and providing that "[s]ubject to specific limitations established by this chapter and council rule, the council shall make determinations on requests for information in favor of access"); *see also* TEX. GOV'T CODE ANN. § 552.301 (Vernon Supp. 2002). Chapter 108 of the Health and Safety Code makes certain information confidential and requires that the Council adhere to certain procedures before releasing certain information, but nothing in chapter 108 relieves the Council of the duty to treat a written request for information as a request for information under the Act. Therefore, although you do not ask about the Council's duty to respond to these requests under the Act, we address that duty here in order to provide a complete answer to your query.

The Act requires a governmental body that receives a written request for information to either promptly provide the information or, if it seeks to withhold the information, to ask for a ruling from the attorney general under section 552.301 of the Act. *See* TEX. GOV'T CODE ANN. §§ 552.221(a) (Vernon Supp. 2002) ("An officer for public information of a governmental body *shall promptly* produce public information for inspection, duplication, or both on application by any person to the officer.") (emphasis added), (d) ("If an officer for public information cannot produce public information for inspection or duplication within 10 business days after the date the information is requested under Subsection (a), the officer shall certify that fact in writing to the requestor and set a date and hour within a reasonable time when the information will be available for inspection or duplication."); 552.301 (governmental body that receives written request for information and wishes to withhold information that is not subject to a prior determination must ask for an attorney general decision within a reasonable time but not later than the 10th business day after receiving written request). The Act does not require a governmental body to create new information in response to a request for information, but does require the governmental body to make a good faith effort to relate a request to information that the governmental body holds or to which it has access. *See A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 676 (Tex. 1995) (Act "compels disclosure of public information that is in existence, but it does not require a government entity to prepare or assemble new information in response to a request"); Tex. Att'y Gen. ORD-563 (1990) at 8 (Act does not require governmental body to perform legal research or to answer general questions), ORD-561 (1990) at 8-9 ("governmental body must make a good faith effort to relate a request to information held by it" but Act does not require governmental body to obtain new information to respond to a request), ORD-555 (1990) at 1-2 (only information in existence is subject to disclosure). A governmental body is required to respond to a request that requires the manipulation of existing data rather than the creation of new information. *See Fish v. Dallas Indep. Sch. Dist.*, 31 S.W.3d 678, 681-82 (Tex. App.– Eastland 2000, pet. denied); TEX. GOV'T CODE ANN. § 552.231 (Vernon Supp.

2002) (special procedures for responding to requests that require programming or manipulation of data).

Here, you do not seek to withhold the requested information or argue that the requests would require the Council to create or obtain information that does not exist. Rather, it appears that information responsive to the requests exists and that the Council wishes to provide the information, but that at least some responsive information must be derived from data that exists in the Council's public use data file and, as a result, is not immediately available. *See* Request Letter, *supra* note 1, at 1 (stating that in order to respond to the requests Council staff "must develop customized hospital-level information based on hospital discharge data contained in the Council's public use data file").

When a governmental body does not withhold information under a prior determination or while seeking an attorney general decision, the Act mandates a governmental body to produce information promptly. *See* TEX. GOV'T CODE ANN. § 552.221(a) (Vernon Supp. 2002) ("An officer for public information of a governmental body *shall promptly* produce public information for inspection, duplication, or both on application by any person to the officer.") (emphasis added); Tex. Att'y Gen. ORD-664 (2000) at 2 ("[T]he Act requires a governmental body, in the usual case, to produce requested public information as soon as reasonably possible and without delay. . . . A reasonable period of time may be less than or greater than ten business days, depending on the circumstances."). Significantly, however, section 552.231 of the Act establishes a special procedure for a governmental body to follow when it determines that responding to a request "will require programming or manipulation of data" and that "compliance with the request is not feasible or will result in substantial interference with its ongoing operations" or "the information could be made available in the requested form only at a cost that covers the programming and manipulation of data." TEX. GOV'T CODE ANN. § 552.231(a) (Vernon Supp. 2002); *see also id.* § 552.003(2), (4) (defining "manipulation" and "programming"). Based on your statement that the data needed to respond to these requests exists in the public use data file but must be "customized," it would appear that section 552.231 would apply to these requests and would permit the Council to take a reasonable period of time to program or manipulate the data.

Section 552.231 requires the governmental body to provide the requestor with a written statement within a certain time that the information is not available in the requested form; a description of the form in which the information is available; a description of any contract or services that would be required to provide the information in the requested form; a statement of the estimated cost of providing the information in the requested form, as determined in accordance with the rules established by the Building and Procurement Commission under section 552.262; and a statement of the anticipated time required to provide the information in the requested form. *See id.* § 552.231(b) (specifying contents of written statement), (c) (deadlines for written statement). Of course, the Council's authority to charge fees is governed by chapter 108 of the Health and Safety Code rather than section 552.262 of the Act. *See* Tex. Att'y Gen. Op. No. JC-0469 (2002).

On providing the written statement to the requestor, the governmental body does not have any further obligation to provide the information in the requested form or in the form in which it is available until the requestor states in writing to the governmental body that the requestor:

> (1) wants the governmental body to provide the information in the requested form according to the cost and time parameters set out in the statement or according to other terms to which the requestor and the governmental body agree; or

> (2) wants the information in the form in which it is available.

TEX. GOV'T CODE ANN. § 552.231(d) (Vernon Supp. 2002). Finally, section 552.231 requires a governmental body's public information officer to "establish policies that assure the expeditious and accurate processing of requests for information that require programming or manipulation of data." *Id.* § 552.231(e). A governmental body must also "maintain a file containing all written statements issued under this section in a readily accessible location." *Id.*

In sum, written requests for information received by the Council are requests for information governed by the Public Information Act, which the Council must handle subject to the restrictions of chapter 108 of the Health and Safety Code. Section 552.231 of the Government Code provides a procedure for the Council to follow when it receives a request that would require it to program or manipulate public use data. We do not determine whether the Council has complied with the requirements of the Act in handling the two requests at issue here.

Second, before addressing your specific questions, we also address the role of the scientific review panel. The Council rule establishing the scientific review panel directs the panel to evaluate requests for use of the Council's research data file, a data base which is broader than the public use data file. *See* 26 Tex. Reg. 10772, 10776 (2001), *adopted* 27 Tex. Reg. 3183 (2002) (to be codified as an amendment to 25 TEX. ADMIN. CODE § 1301.20(a)(1), (b)); *see also* 27 Tex. Reg. 3183, 3186 (2002) (to be codified as an amendment to 25 TEX. ADMIN. CODE § 1301.11(35)) (defining "research data file"); *see also* TEX. HEALTH & SAFETY CODE ANN. § 108.0135(a) (Vernon 2001) ("The council shall establish a scientific review panel to review and approve requests for information other than public use data."). As you intend to provide the requested information, it would appear that this rule applies only to requests for information from the Council research data file and does not apply to requests for information from the public use data file. In addition, we note that you do not ask whether these requests for information must be approved by the scientific review panel. *Compare* TEX. HEALTH & SAFETY CODE ANN. § 108.0135(a) (Vernon 2001) ("The council shall establish a scientific review panel *to review and approve requests for information other than public use data*.") (emphasis added), *with id.* § 108.002(17) (Vernon Supp. 2002) (defining "public use data" as "patient level data relating to individual hospitalizations *that has not been summarized or analyzed*") (emphasis added). We assume that the Council construes chapter 108 to authorize it to analyze public use data for individual requestors, and that the Council construes section 108.0135 not to require the scientific review panel to approve requests for analyses of public use data. This is a

reasonable construction, as chapter 108 expressly charges the Council with using data for the benefit of the public and makes public use data itself available to the public. *See id.* §§ 108.011(a) (Vernon 2001) ("The Council shall promptly provide public use data . . . to those requesting it."); .013(a) (Vernon Supp. 2002) (requiring Council to use data it receives "for the benefit of the public," and providing that "[s]ubject to specific limitations established by this chapter and council rule, the council shall make determinations on requests for information in favor of access."); *see also id.* § 108.006(h) (Vernon 2001) ("In accordance with Section 108.0135, the council may release data collected under Section 108.009 that is not included in the public use data file minimum data set established under Subsection (f).").

With these caveats, we turn to your questions about section 108.011 of the Health and Safety Code and the procedures the Council must follow to release information specific to a provider. *See* Request Letter, *supra* note 1, at 1. You note that section 108.011(f) provides that "[a] report issued by the council shall include a reasonable review and comment period for the affected providers before public release of the report" and ask whether responses to outside inquiries constitute reports under this provision. *See id.* Specifically, you ask:

> (1) Do compilations of data by Council staff responsive to the foregoing requests constitute "reports" within the meaning of § 108.011(f)?

> (2) If the answer to (1) is "yes," will the transmittal of the report to Senator Harris constitute a "public release" of the data requiring "a reasonable review and comment period for the affected providers" before its release?

*Id.* Again, we address the Council's duties with respect to the release of both public use data and analysis of public use data, which is not itself "public use data" under chapter 108's definition of that term. *See* TEX. HEALTH & SAFETY CODE ANN. § 108.002(17) (Vernon Supp. 2002) (defining "public use data" as "patient level data relating to individual hospitalizations *that has not been summarized or analyzed*") (emphasis added).

Your query states that the information needed to respond to the two requests is contained in the Council's public use data file. Under section 108.011(a), the Council must "promptly provide public use data . . . to those requesting it." *Id.* § 108.011(a) (Vernon 2001). However, section 108.011(e) requires the Council to notify a provider, such as a hospital, if it receives a request for public use data about a specific provider:

> If public use data is requested from the council about a specific provider, the council shall notify the provider about the release of the data. This subsection does not authorize the provider to interfere with the release of that data.

*Id.* § 108.011(e). This provision does not distinguish between requests for information from the public or a legislator or other public entity. In addition, section 108.011(g) requires the Council to allow a hospital to submit written comments regarding any specific public use data to be released concerning the hospital:

> *The council shall adopt rules allowing a provider to submit concise written comments regarding any specific public use data to be released concerning the provider.* The council shall make the comments available to the public and the office of the council and in an electronic form accessible through the Internet. The comments shall be attached to any public release of the public use data. Providers shall submit the comments to the council to be attached to the public release of public use data in the same format as the public use data that is to be released.

*Id.* § 108.011(g) (emphasis added). Unlike section 108.011(f), section 108.011(g) is not limited to the public release of data in the form of a report but rather applies to any release of data by the Council in any form. Subsections (e) and (g) of section 108.011, taken together, require the Council to notify a provider if public use data is requested about the provider and to afford a provider an opportunity to provide written comments before releasing public use data specific to the provider. The requirements of section 108.011(e) and (g) apply whether or not public use data is released in a report.

Again, it may be the case that in responding to these requests, the Council will release information summarizing or analyzing "public use data" such that the information no longer constitutes "public use data" as defined by chapter 108. *See id.* § 108.002(17) (Vernon Supp. 2002) (defining "public use data" as "patient level data relating to individual hospitalizations *that has not been summarized or analyzed*") (emphasis added). Chapter 108 requires the Council to release certain kinds of data and to issue certain reports under sections 108.010 and 108.011(b) and (c); it does not specifically address the Council's authority to release information in the form at issue here, or specify the Council's duties with respect to such releases of information. We conclude, however, that the release of information summarizing or analyzing "public use data" should be treated as a report within the meaning of section 108.011(f).

Section 108.011(f) provides that "[a] report issued by the Council shall include a reasonable review and comment period for the affected providers before public release of the report." *Id.* § 108.011(f) (Vernon 2001). Subsection (f) is not limited to reports issued by the Council under section 108.010 or section 108.011(b) or (c) and we decline to give it such a narrow construction. And, given that the legislature has required the Council to afford a provider an opportunity to comment whenever it releases public use data specific to the provider or a report that affects the provider, we doubt that the legislature would have intended to deprive providers of an opportunity to comment on information specific to the provider merely because it will be released by the Council in a form that is not public use data or a "report" the Council is required to issue under section

108.010 or 108.011(b), (c). *See* TEX. GOV'T CODE ANN. § 311.021 (Vernon 1998) (in enacting a statute, it is presumed that "a just and reasonable result is intended").

We also briefly address the interplay of section 108.011's procedural requirements and the Public Information Act. First, when the Council receives a request for public use data about a specific provider, it must promptly provide the information as required by section 108.011(a) of the Health and Safety Code and the Act. Chapter 108 also requires the Council to notify the provider about the release of the data and to allow a provider to comment on the data before it is released. *See* TEX. HEALTH & SAFETY CODE ANN. § 108.011(e), (g) (Vernon 2001). The Council must require providers to comment on the data within a time period consistent with its duty to promptly provide the requested information. *See generally* Tex. Att'y Gen. ORD-664 (2000) at 2 ("[T]he Act requires a governmental body, in the usual case, to produce requested public information as soon as reasonably possible and without delay. . . . A reasonable period of time may be less than or greater than ten business days, depending on the circumstances."). Again, section 552.231 of the Public Information Act provides a procedure for the Council to follow when it receives a request that would require it to program or manipulate public use data and permits the Council to take a reasonable time to program or manipulate the data, which would include a reasonable amount of time to allow for provider review and comment as required by section 108.011 of the Health and Safety Code. Finally, with respect to analyses of public use data and reports, we note that under section 552.022(a)(1) of the Public Information Act "a completed report, audit, evaluation, or investigation made of, for, or by a governmental body" is public information and not excepted from required disclosure under the Act unless "expressly confidential under other law." TEX. GOV'T CODE ANN. § 552.022(a)(1) (Vernon Supp. 2002). We conclude with respect to reports governed by section 108.011 of the Health and Safety Code, including analyses of public use data subject to section 108.011(f), that a completed report does not exist for purposes of section 552.022(a)(1) of the Act before affected providers have been afforded an opportunity to review and comment as provided by section 108.011.

You also ask whether release of information to a legislator constitutes "public release" for purposes of section 108.011(f). *See* Request Letter, *supra* note 1, at 1. Chapter 108 expressly provides that confidential information may not be released by the Council to another agency, which would include a legislator. *See* TEX. HEALTH & SAFETY CODE ANN. § 108.013(i) (Vernon Supp. 2002) ("Notwithstanding any other law, the council and the department may not provide information made confidential by this section to any other agency of this state."). Chapter 108 does not address release of other information to other agencies or specifically state whether or not procedural requirements such as those set forth in section 108.011 apply to the release of information to other agencies. We conclude that these requirements apply to the release of information to other agencies. Section 108.011(f) does not preclude the release of information but rather affords providers an opportunity to comment on information before its release. Furthermore, as we have noted, a provider must also be given an opportunity to comment before the Council releases public use data specific to the provider. *See id.* § 108.011(e), (g) (Vernon 2001). In the context of 108.011(f), we conclude that "public release" means release of a report to anyone or any entity other than the Council and affected providers, including another agency or a legislator. Construing section

108.011(f) to require the review and comment period before information is released to an agency or a legislator is consistent with the special consideration the legislature has afforded providers throughout section 108.011 and, moreover, does not limit agencies' and legislators' ultimate access to the information.

This construction of section 108.011(f) is consistent with the Public Information Act. Section 552.008 of the Act, TEX. GOV'T CODE ANN. § 552.008 (Vernon Supp. 2002), provides legislators with a special right of access to information that might be confidential or otherwise withheld from public disclosure under that Act. However, section 552.008 expressly states that it does not affect "the procedures under which . . . information is obtained under other law." *Id.* § 552.008(c)(2). Because section 108.011 contains procedures for obtaining information under "other law," section 552.008 does not affect section 108.011's notice and comment requirements. Moreover, if this construction of section 108.011 were not consistent with the Public Information Act, the requirements of section 108.011 would prevail. *See* TEX. HEALTH & SAFETY CODE ANN. § 108.0045 (Vernon 2001) ("*Subject to the restrictions of this chapter*, the council is subject to the open records law, Chapter 552, Government Code.") (emphasis added).

# S U M M A R Y

Section 108.011(e) of the Texas Health and Safety Code requires the Texas Health Care Information Council to notify a hospital if the Council receives any request for public use data that is specific to the hospital. Section 108.011(g) requires the Council to allow a hospital to submit written comments regarding any public use data to be released that is specific to the hospital, whether the data is released by the Council in a report or in any other form.

Section 108.011(f) requires the Council to include a reasonable review and comment period for affected providers before public release of a report. A Council response to a request for information that analyzes or summarizes public use data must be treated as a report under section 108.011(f). In the context of section 108.011(f), "public release" means release of a report to anyone or any entity other than the Council and affected providers.

Written requests for information received by the Council are requests for information governed by the Public Information Act, TEX. GOV'T CODE ANN. ch. 552 (Vernon 1994 & Supp. 2002), which the Council must handle subject to the restrictions of chapter 108 of the Health and Safety Code. Chapter 108 of the Health and Safety Code and the Public Information Act require the Council to promptly release public use data, subject to chapter 108's restriction that a provider must be given notice of requests for data specific to the provider and an opportunity to review and comment. Section 552.231 of the Public Information Act provides a procedure for the Council to follow when it receives a request that would require it to program or manipulate public use data. Reports governed by section 108.011 of the Health and Safety Code, including analyses of public use data subject to section 108.011(f), are not completed reports for purposes of section 552.022(a)(1) of the Public Information Act before affected providers have been afforded an opportunity to review and comment as provided by section 108.011.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee