ACCEPTED
03-14-00801-CV
5933172
THIRD COURT OF APPEALS
AUSTIN, TEXAS
7/6/2015 12:00:00 AM
JEFFREY D. KYLE
CLERK

## NO. 03-14-00801-CV

### IN THE THIRD COURT OF APPEALS
Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
7/7/2015 4:06:14 PM
JEFFREY D. KYLE
Clerk

_____

THE UNIVERSITY OF TEXAS SYSTEM AND THE UNIVERSITY OF TEXAS
AT DALLAS
*Appellants,*
v.
KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS
*Appellee,*
v.
MARILYN CAMERON,
*Intervenor.*

_____

On Appeal from the 261st Judicial District Court of Travis County, Texas
Trial Court Cause No. D-1-GV-11-001923
The Honorable Stephen Yelenosky, Judge Presiding

_____

### INTERVENOR'S BRIEF

_____

MARILYN CAMERON
18222 Outback Lakes
Humble, Texas 77346
Tel: (713) 320-4092
mizcameron@yahoo.com

***Intervenor/Appellee***

**REFERENCE TO THE PARTIES**

Appellants are The University of Texas System and the University of Texas at Dallas, both will be referred to as "the University" here. Appellee is Ken Paxton, Attorney General of Texas, and will be referred to as "the Attorney General" here, and Intervenor is Marilyn Cameron and will be referred to as "the Intervenor or Intervenor" in the brief.

**REFERENCES TO CLERK'S RECORD**

Any reference to clerk's record will be notated as C.R. [Page #].[1]

---

[1] For clarity, there is duplication in the record on file and copy given to Intervenor. The Attorney General's letter ruling, OR2011-17401 (November 28, 2011) is copied into the record three times. The document appears at C.R. 7-9, C.R. 40-42, and C.R. 68-70. The document appears in the Appellants Br. at 6 as C.R. 69. To simplify, Intervenor will refer to document at its first appearance – C.R. 7-9.

# TABLE OF CONTENTS

Reference to the Parties………………………………………………………………ii

References to Clerk's Record…………………………………………………………ii

Table of Contents……………………………………………………………………iii

Index of Authorities…………………………………………………………………iv

Statement on Oral Argument………………………………………………………...vi

Issue Presented………………………………………………………………………vi

Introduction………………………………………………………………………...1

Statement of Facts……………………………………………………………………2

Standard of Review…………………………………………………………………...5

Summary of the Argument……………………………………………………………6

Argument……………………………………………………………………………...7

I.     For the issue and evidence presented, the trial court did not err when granting final judgment in favor of the motion for summary judgment requested by the Attorney General…………………………………………...7

    A. The University presented a case for refusal based upon exceptions to the Public Information Act, common-law privacy issues, and constitutional privacy concerns…………………………………………………………...7

    B. Information on human subject participants is necessary for transparency, accountability, and protection……………………………………………..9

    C. Based upon arguments and evidence, the decision to grant judgment in favor of the Attorney General was reasonable and fair…………………..15

Prayer………………………………………………………………………………...16

Certificate of Compliance……………………………………………………………17

Certificate of Service………………………………………………………………...17

# INDEX OF AUTHORITIES

## CASES

*A & T Consultants, Inc., v. Sharp*,
  904 S.W.2d. 668, 674 (Tex. 1995)…………………………………………………...5-6

*Bivens v. Six Unknown Fed. Narcotics Agents*,
  403 U.S. 388 (1971)……………………………………………………………..15

*City of Garland v. Dallas Morning News*,
  22 S.W.3d 351, 356 (Texas 2000)…………………………………………………...5

*Feres v. United States*,
  340 U.S. 135 (1950)……………………………………………………………..15

*Industrial Foundation of the South v. Texas Indus. Accident Bd.*,
  540 S.W.2d 668 (Tex. 1976)…………………………………………………...6, 8

*United States v. Stanley*,
  483 U.S. 669 (1987)…………………………………………………………14-15

## STATUTES

45 CFR Part 46………………………………………………………………………13
45 CFR Part 690………………………………………………………………………13
45 CFR 690.102 ……………………………………………………………………..13
45 CFR 690.116(a)(5)………………………………………………………13-14
45 CFR 690.122………………………………………………………………………13
Texas Education Code § 61.003 (rev. 2013)………………………………….......6
Texas Government Code § 402.041…………………………………………………7
Texas Government Code § 402.042…………………………………………………7
5 U.S.C. 552 <u>et. seq</u>…………………………………………………………..2

# Public Information Act (Texas)

552.021…………………………………………………………………………..2

552.101……………………………………………………………………4, 6, 8

552.222(b)……………………………………………………………………….6

552.324…………………………………………………………………………..5

## STATEMENT ON ORAL ARGUMENT

Intervenor believes that an oral argument will prohibit her total participation in the lawsuit and is not necessary for review. Should the Court grant oral argument, Intervenor requests accommodations that will permit participation in accordance with statutes, rules, and state laws.

## ISSUE PRESENTED

Was the trial court correct in granting final judgment to Attorney General on his motion for summary judgment?[2]

---

[2] Final court order is C.R. 84-85.

NO. 03-14-00801-CV

IN THE THIRD COURT OF APPEALS
Austin, Texas
_____

THE UNIVERSITY OF TEXAS SYSTEM AND THE UNIVERSITY OF TEXAS
AT DALLAS
*Appellants,*
v.
KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS
*Appellee,*
v.
MARILYN CAMERON,
*Intervenor.*
_____

On Appeal from the 261st Judicial District Court of Travis County, Texas
Trial Court Cause No. D-1-GV-11-001923
The Honorable Stephen Yelenosky, Judge Presiding
_____

INTERVENOR'S BRIEF
_____

TO THE HONORABLE JUSTICES OF THE THIRD COURT OF APPEALS:

In 1973, the Texas Public Information Act (the "Act") was written in response to a stock fraud scandal that rocked the state's capitol and prompted the 63rd legislative session to take action. The Act was rewritten in 1993 and subsequently became the Public Information Act under Texas Government Code 552. With noble intent, the Act placed a spotlight on quiet dealings of governmental bodies and placed those actions within the view and analysis of the

public.  The touchstone of the Act is section 552.021:  "Public information is available to the public at a minimum during the normal business hours of the governmental body."[3]  Indeed, governmental practices without public transparency and accountability is a mirror with no reflection.

The University seeks to withhold public information, as determined by the Attorney General (C.R. 9) and the District court (C.R. 84), that is relevant to the public and is not excepted from disclosure.  In addition, the University requests a remand for a full hearing in order to change the legal standards for granting public information requests in the state.

## STATEMENT OF FACTS

A research or investigation starts with a question:  What is this about?  Initially, the National Science Foundation (NSF) was contacted on July 17, 2011, under the Freedom of Information Act (FOIA)[4] with the criteria that such projects would involve human subjects, perhaps a large research budget, and tested in the state.  On July 23, 2011, the search was refined to specific names of state universities that met the criteria along with a series of NSF project numbers – the University was one of several.  On August 29, 2011, the NSF responded with

2

---

[3] Office of the Attorney General, *2014 Public Information Handbook*, p. 1.  Available at http://www.texasattorneygeneral.gov (last visited 6/2015).
[4] 5 U.S.C. 552 et. seq.

responsive records and information on institutional review boards (IRB).

The University had three projects that were:  in-state, involved human subjects, utilized labs, and utilized various technology.  In September, 2011, Intervenor submitted email requests, to the University of Texas at Dallas, seeking documents related to three approved NSF projects:  MR 09-50 "Collaborative Research:  Behavioral Insights into National Security Issues" (NSF #0905060), MR 10-056 "Collaborative Research:  Caring for Others…It's Not (Just) About the Money" (NSF #1062055), and NSF 10-098 "An Artefactual Field Experiment on Information from the Social Network:  Implications for Immigration (NSF #1025048).  C.R. 14; 43.  On September 21, 2011, the University responded with a request, for an official decision, to the Attorney General stating:  "We anticipate that the balance of responsive documents have applicable exceptions to disclosure.  Accordingly, <u>we reserve **all** the listed exceptions in the Public Information Act and those captured by "other law" in Section 552.101 *Texas Government Code*</u>."  C.R. 46.[5]  On September 22nd, Intervenor sent a response to the Attorney General detailing why the information is public and should be released.  C.R. 20-21.  On September 28th, the University sent a follow-up addendum, to the September 21, 2011 letter, and listed

---

[5] *Re:  Open Record Request #1 from Marilyn Cameron to the University of Texas at Dallas OGC# 139654.*

seven types of information requested which included, but were not limited to: location of each experimental behavioral lab, copies of continuing reviews, reports on adverse events, copies of informed consent forms (blank), names of human subjects, information collected from various community agents and businesses, and any information related to military (or military-related) involvement.[6] C.R. 49.  The University maintained that it (at the time) did not possess documents responsive to most of the request and asserted that the "names" were excepted from disclosure under §552.101 of the Texas Government Code with applicable common law and constitutional privacy rights.  C.R. 48-51. §552.101 excepts from disclosure "information considered to be confidential by law, either constitutional, statutory, or by judicial decision."[7]  On October, 2011, Intervenor wrote to the Attorney General regarding the University's addendum. The letter addressed some "omissions in research protocol" that would impact the guidelines for the use of human subjects in research.  C.R. 22-25.[8]  On November 28, 2011, the Attorney General issued letter ruling OR2011-17401, finding that the University "[had] not demonstrated the submitted information is highly intimate or embarrassing and not a matter of legitimate public interest." C.R. 9.

4

---

[6] *Re:  Addendum Open Record Request #1 from Marilyn Cameron to The University of Texas at Dallas – AG ID 437160 (OGC#139654).*
[7] Texas Government Code §552.101.
[8] *Response to Addendum to Open Record Request (AG ID #437160).*

The University filed a lawsuit with the District court on December 9, 2011 (D-1-GV-11-001923) C.R. 3-6; Intervenor filed into the lawsuit on January 18, 2012. C.R. 13-19. Appellee, Attorney General, made an appearance on December 28, 2011. C.R. 10-11.[9]

On October 22, 2014, Appellants filed a motion for final summary judgment (C.R. 30-38)[10] and Appellee, Attorney General, filed a cross-motion for summary judgment on October 23, 2014. C.R. 57-66.[11] Final judgment, 261st Judicial District, was granted in favor of Appellee, Attorney General, on November 24, 2014. C.R. 84-85.

## STANDARD OF REVIEW

A lawsuit filed under Texas Government Code § 552.324, the Public Information Act (PIA), which resulted in a summary judgment at the trial court level requires *de novo* review. "When both parties have filed motions for summary judgment, "'each party bears the burden of establishing that it is entitled to judgment as a matter of law.'" C.R. 58-59 (citing *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000).[12] Questions regarding whether information is public under the Public Information Act or whether that information

5

---

[9] See *Defendant's Original Answer*.
[10] See *Plaintiff's Motion for Final Summary Judgment*.
[11] See *Defendant Attorney General's Cross-Motion for Summary Judgment and Notice of Hearing*.
[12] Id. at 58-59.

is confidential are legal questions. See *A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 674 (Texas 1995).[13]

## SUMMARY OF THE ARGUMENT

In this matter, the disputed information is a list of names of research participants in a national security scenario as part of a federally funded experimental project conducted by investigators from the University of Texas at Dallas. In this matter, the University wishes the Court to review the summary judgment in view of a "more robust" legal standard outside of Texas Government Code § 552.101 and expand upon the statutory opinion in *Industrial Foundation*.[14]

The final summary judgment was correct based upon the evidence presented, the disputed public information, and the legal framework provided in the Attorney General Letter Ruling OR2011-1740l. An exception to disclosure, under common-law, burdens the University with a two-part test. The test was not met. A list of names, in and of itself, is not embarrassing or intimate, even when attached to an investigative study conducted by an educational institution.[15] §552.222(b) directs that requestor need not give reasons for seeking information. Even though a list of names is public information in regards to the Public Information Act,

6

---

[13]Id. at 59.
[14]See Appellants Br. at 9.
[15] See Texas Education Code § 61.003 <an ~ of higher education>.

the Court is asked to consider how such a request will add a layer of protection for human research subjects and how the release of additional information on this collaborative research project are in the interest of the public. The release of the disputed information will do no harm to the subjects; in fact, the result will be quite the opposite.

## ARGUMENT

I. **For the issue and evidence presented, the trial court did not err when granting final judgment in favor of the motion for summary judgment requested by the Attorney General.**

   A. **The University presented a case for refusal based upon exceptions to the Public Information Act, common-law privacy issues, and constitutional privacy concerns.**

The Attorney General is authorized by statute to render opinions, in the public interest, based upon "legal reasons and principles" for such a decision.[16] Pursuant to Texas Government Code § 402.042, the Attorney General shall, upon written request, issue a written opinion "on a question affecting the public interest or concerning the official duties of the requesting person."

In 2011, the Attorney General, upon request from the University, issued Letter Ruling OR2011-17401. Concisely written, the letter covers all areas to justify release of disputed information. Based upon representation by appellants

7

---

[16]Texas Government Code § 402.041.

that it did not possess most documents responsive to Intervenor's request, the letter ruling accepted that a good-faith effort was made related to the request and that the only information at issue was a list of names. C.R. 8. Citing *Industrial Foundation*, the University could not withhold information just because there was an expectation that the information would remain confidential. The submitted information had to come with an explicit exception to disclosure.

Next, statutory provisions related to common-law privacy rights, Section 552.101, must passed the two-part test as provided by I*ndustrial Foundation*. In order to prove an exception, the information must be (1) of a highly intimate and embarrassing nature that would be "objectionable to a reasonable person" if published, and (2) The information must not be of a "legitimate concern to the public." C.R. 8. This test was not met.

Next, the letter addressed constitutional privacy as related to the disputed information, a list of names. Here, the opinion shifts to "zones of privacy". These zones relate to intimate personal matters that are, but not limited to, "marriage, procreation, contraception, family relationships, and child rearing and education" as recognized by the U.S. Supreme Court. Constitutional privacy is protected under Section 552.101 for only highly intimate aspects of human life. This includes protection from having intimate personal matters publicized. C.R. 8.

8

In addition, the Attorney General, through the letter ruling, opinioned that appellants had not proven that the submitted information was excepted, under state statute, common-law, or constitutional privacy interests, from disclosure. C.R.9. With this matter, the same arguments have been raised throughout the course of litigation; the outcome has sided with the opinion voiced in the letter ruling. The opinion was based upon sound and ethical legal principles in matters of privacy and public interests.

Finally, the University raises the issue as to a lack of evidence to support the summary judgment decision for the Attorney General below. Pursuant to Texas Rules of Appellate Procedure 38.2(b)(1)(A), evidentiary support, for judgment in favor of release of disputed information, was provided by Attorney General Letter Ruling OR2011-17401 C.R. 7-9, Intervenor's email to support release of information (September, 2011) C.R. 20-21, and Intervenor's email to address omissions and questions regarding grant proposals (October, 2011) C.R. 22-25.

### B. Information on human subject participants is necessary for transparency, accountability, and protection.

What is in a name that would cause it to be confidential? Is a name the same as a personal identity? Merriam-Webster's dictionary defines "name" as a

9

"word or phrase that constitutes the distinctive designation of a person."[17]  Identity is defined as "the distinguishing character or personality of an individual."[18]  Even though the dictionary defines a "name" as a "distinctive designation", it is partly accurate within a certain context.  Take the name "Mary"; within the context of family and friends, it may well be distinctive.  However, what if someone went to her place of work, a middle to large company, and asked to talk to her.  Someone might ask which one.  That person would need to be given additional information to identify the correct "Mary".  As we know, "Mary" is a very common name and a very large number of people use that word as a first name.  If a common last name was added to "Mary" and the inquiring person went back to the place of employment seeking her, the employer might still ask which one.  From a sociolinguistic point of view, most common names are not distinctive enough to denote singularity, which is about the identification and characteristics of a single individual.  How does today's society make "Mary" singular?  Now, we get into capturing her identity.  Governmental agencies and businesses need to identify, with precision, a singular individual for various reasons with respect to commerce, taxes, education, law enforcement, and national security.  In order to accomplish this, these entities, typically, use a stream of singular numerical strings attached

10

---

[17] Merriam-Webster's Collegiate Dictionary, 11th ed., Merriam-Webster, Inc. (2003), p. 823.
[18] Id. at p. 616.

to an individual person's name which gives that person a singular *identity*. A name alone is not enough to identify or distinguish one person from another; something else is needed. Today, identity is hardly a combination of name, social security number, date of birth, address, telephone number, financial information, passport number, driver's license number, and various other bits of informational available. One might say that this is yesterday's information; with technological advances, facial recognition identifiers, biometric samples, and predictive psychological subcodes will be added (to existing numerical strings) for cutting-edge, personal identification profiles in the future. Is a name different from an identity? Yes. The focus of this lawsuit is a list of names, not personal identities.

Informing the public about the actions of governmental bodies is a hallmark of the Act and various other initiatives by federal and state government. If a government-sponsored initiative is cloaked in mystery, can the public feel comfortable that all is well? Research is a precursor to innovation; however, most information about experimental research is done hidden from public view. Such research is published in peer-review journals using the technical language of the academic discipline and typically there is a fee to access scholarly articles. Project investigators and others, immediately involved with the research, share results at conferences far away from the general public, where attendees have an economic,

11

professional, or personal interest in the results. Along with the Freedom of

Information Act and the Texas Public Information Act, other initiatives have given

the public more legal access to information about government-sponsored

innovations and projects. For example, Executive Order 13563 was signed by the

President as a means to increase transparency, accountability, and public

awareness of governmental affairs. Section 4 states:

> "[E]ach agency shall identify and consider regulatory
> approaches that reduce burdens and maintain flexibility
> and freedom of choice for the public. These approaches
> include warnings, appropriate default rules, and disclosure
> requirements as well as provision of information to the
> public in a form that is clear and intelligible."[19]

At the heart of this lawsuit is a list of names. The requestor has followed the

lead of the University; the institution mentioned that it did not, at the time, have

information responsive to most of the items on the public information request. C.R.

45-47 and C.R. 48-51. The requestor accepted that what was claimed was true.

However, there is still a barrier to disclosure for a small part of the initial request.

The University has cited that releasing the requested information violates its

First Amendment right to academic freedom. Appellants Br. at 9. This concern

was not presented before the trial court. The University has successfully received

12

---

[19] U.S. President. Executive Order 13563. "Improving Regulation and Regulatory Review."
<u>Federal Register</u> 76, no. 14. January 21, 2011, 3821-3823.

government-sponsored funding for research in the past, is conducting such sponsored research today, and may continue to do so in the future. State and federal regulations are designed to protect the public's interests and are not contradictory to academic freedom.

History teaches us that innovative research and practices can have significant benefit for many members of society; however, behaviors performed, outside of public view, in the name of research can cause serious harm to human subjects. 45 CFR Part 690.102 defines "human subject" as a "living individual about whom an investigator…obtains data through intervention or interaction with the individual…." Research is defined as a "systematic investigation, including research development, testing and evaluation, designed to develop or contribute to generalizable knowledge."[20] Pursuant to 45 CFR § 690.122, grants funded by a federal agency cannot be expended unless all policies related to human subjects have been met. Rules regarding informed consent and oversight by an institutional review board (IRB) are well-defined "common rule" policies. Section 690.116(a)(5) recognizes that confidentiality may be limited by state policies; it

13

---

[20] Source for definitions are 45 CFR 690.102. 45 CFR 690: Federal Policy for the Protection of Human Subjects is also called "The Common Rule for the Protection of Human Subjects". These rules are in place for all projects funded by the National Science Foundation. Same as 45 CFR Part 46, which relate to U.S. Department of Health and Human Services.

states that informed consent shall include "[a] statement describing the extent, if any, to which confidentiality of records identifying the subject will be maintained."[21] The National Science Foundation policies recognize that the public may need to know information about a research project and its human subjects.

Ethical guidelines and public awareness encourage openness, accountability, and transparency for research conducted with human subjects. Many people have heard of well-publicized incidents such as the Tuskegee study and biomedical experiments on human subjects during the Second World War. During the Tuskegee study, men were told that they were being treated for a communicable disease; when in fact, they were participants in a longitudinal study on the progression of the disease. They were denied care, long after proper treatment had been discovered. Some incidents are not as well known. In *United States v. Stanley*, 483 U.S. 669 (1987), a military sergeant, in 1958, volunteered to participate in a study on protective clothing and equipment as protection against harmful chemicals used during warfare. Instead, he and thousands of others, were given a hallucinogenic drug, commonly known as LSD. He suffered life-altering side effects. In 1975, he was informed of the use of the drug. He filed a lawsuit under the Federal Tort Claims Act (FTCA) for civil remedy; however, it was

14

---

[21] 45 CFR 690.116(a)(5). 45 CFR 690 can be retrieved through hyperlinks at http://www.hhs.gov/ohrp/humansubjects/commonrule.

decided that he was injured as an "'incident to service'" (*Stanley* citing *Feres v. United States* (1950)).[22] Under the *Feres* doctrine, military personnel cannot sue the Government for injuries sustained while on duty. Stanley was allowed to amend his claim and file using a Biven's claim based upon *Bivens v. Six Unknown Fed. Narcotics Agents*.[23] A claimant can seek civil remedy for constitutional violations against federal officers (not a government agency). The Court ruled that there were "special factors" that prevented remedy under a Biven's claim; service people are under the military justice system and Stanley's injuries were judged as service connected.

With the release of public information, enforceable regulatory safeguards, and greater public awareness, research can be conducted under appropriate guidelines and human subjects may be safely and appropriately incorporated into beneficial research, with legal protection against adverse events.

### C. Based upon arguments and evidence, the decision to grant judgment in favor of the Attorney General was reasonable and fair.

In this matter, the summary judgment was granted based upon evidence presented through the Attorney General Letter Ruling, evidence presented by Intervenor, and documents submitted by the University. The trial court rightfully

15

---

[22] *Feres v. United States*, 340 U.S. 135 (1950). [Case involving negligence.]
[23] 403 U.S. 388 (1971).

ruled that the disputed information should be disclosed.

## PRAYER

Here now and always, the Intervenor faithfully asks this Court to affirm the trial court's decision to grant summary judgment to the Attorney General, and to release public information.

Respectfully submitted,

*/s/ Marilyn Cameron*
Marilyn Cameron
18222 Outback Lakes Trail
Humble, TX  77346
Telephone:  (713) 320-4092
mizcameron@yahoo.com

Intervenor/Appellee

**CERTIFICATE OF COMPLIANCE**

In compliance with Texas Rules of Appellate Procedure 9.4(i)(2), this brief contains 2,512 words, excluding parts of the brief exempted by 9.4(i)(1). The word count is based upon a computer program that was used to type this brief.

Date: July 6, 2015

*/s/ Marilyn Cameron*
Marilyn Cameron

**CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2015, a true and correct copy of the

*Intervenor's Brief* was served via e-service and/or e-mail, to the following:

H. Melissa Mather
State Bar No. 24010216
Assistant Attorney General
Financial and Tax Litigation Division
P.O. Box 12548
Austin, Texas  78711-2548
Telephone:  (512) 475-2540
Fax:  (512) 477-2348
melissa.mather@texasattorneygeneral.gov

Attorney for Appellants

Kimberly Fuchs
State Bar No. 24044140
Chief, Open Records Litigation
Administrative law Division
P.O. Box 12548
Austin, Texas  78711-2548
Telephone:  (512) 475-4195
Fax:  (512) 320-0167
kimberly.fuchs@texasattorneygeneral.gov

Attorney for Appellee


*/s/ Marilyn Cameron*
Marilyn Cameron